WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GWITCHYAA ZHEE CORPORATION and GWICHYAA ZHEE GWICH'IN TRIBAL GOVERNMENT,<br><br>      Plaintiffs,<br><br> vs.<br><br>CLARENCE ALEXANDER and DACHO ALEXANDER,<br><br>    Defendants/Third-Party Plaintiffs,<br><br> vs.<br><br>DAVID BERNHARDT, Acting Secretary of Interior, in his official capacity,<br><br>     Third-Party Defendant. | No. 4:18-cv-0016-HRH |

O R D E R

Defendants/Third-Party Plaintiffs' Motion to Amend

  Defendants/third-party plaintiffs Clarence and Demetrie Alexander move to amend their answer, counterclaim, and third-party complaint.[1] This motion is unopposed by plaintiffs

---

[1] Docket No. 61.

-1-

Gwichyaa Zhee Gwich'in Tribal Government and Gwitchyaa Zhee Corporation,[2] presumably because the Alexanders are in fact only seeking leave to amend their third-party complaint. The Alexanders' motion to amend is opposed by third-party defendant David Bernhardt, Acting Secretary of the Interior.[3] Oral argument was not requested and is not deemed necessary.

Concurrent with this order, the court is entering an order granting plaintiffs' motion to amend their complaint. The Alexanders have stated that they will file another motion to amend their third-party complaint if the court grants plaintiffs' motion to amend. While it struck the court that it might be more efficient to summarily deny the instant motion, because the Alexanders' proposed third-party amended complaint is poorly drafted, the court offers the following in the hope of narrowing the problems with any future motion by the Alexanders to amend their third-party complaint.

Background

This case currently involves a dispute over a parcel of land known as Tract 19A which was part of an ANCSA conveyance of land from the United States to plaintiff GZ Corporation. Plaintiffs allege that in 2008, in order to comply with their obligations under § 14(c)(1) of ANCSA, they submitted a "Map of Boundaries" to the Bureau of Land Management (BLM) "that identified . . . 14(c)(1) Claims . . . encompassing Fort Yukon and its nearby surround-

---

[2]Docket No. 66.

[3]Docket No. 70.

ings. . . ."[4] Plaintiffs allege that the Fort Yukon Map of Boundaries created Tracts 19 and 19A.[5] Plaintiffs allege that survey drawings were done after the Fort Yukon Map of Boundaries was submitted to the BLM but that the drawings for Tracts 19 and 19A were originally incorrect because defendants "convinced the surveyor to include more acreage in their § 14(c)(1) Claim than identified on the Fort Yukon Map of Boundaries."[6] Plaintiffs allege that the survey drawings were corrected in 2014 "to provide the appropriate boundary for Tracts 19 and 19A."[7] Plaintiffs allege that after they received the final survey drawings, "GZ Corporation began to execute deeds to provide formal documentation of the § 14(c)(1) Claims."[8] Plaintiffs allege that they quitclaimed Tract 19 to Clarence Alexander in 2016 but that they retain title to Tract 19A.[9]

The Alexanders, however, contend that the boundaries on the Fort Yukon Map of Boundaries are incorrect and that Clarence Alexander's § 14(c)(1) claim includes some or all of Tract 19A.[10] The Alexanders also contend that there are issues as to whether plaintiffs

---

[4]Complaint at 3, ¶ 9, Attachment A, Notice of Removal, Docket No. 1.

[5]Id. at 3, ¶ 10.

[6]Id. at 3-4, ¶ 12.

[7]Id. at 4, ¶ 13.

[8]Id. at 4, ¶ 14.

[9]Id. at 4, ¶¶ 13, 15.

[10]Affidavit of Demetrie (Dacho) Alexander at 2, ¶¶ 8-12, appended to Defendants' Opposition to Plaintiffs' Motion to Remand, Docket No. 14.

-3-

complied with the regulatory requirements for § 14(c)(1) claims. In addition, the Alexanders contend that they have obtained documents via FOIA requests that show that the acreage of Tract 19 was reduced sometime between 2011 and 2014, that the BLM permitted GZ Corporation to "replat" Tract 19 in 2013-2014, and that this replatting resulted in the reduction of Tract 19, the relocation of Tract 9,[11] and the creation of Tract 19A.

Plaintiffs have brought an ejectment claim against the Alexanders; and the Alexanders have asserted four counterclaims against plaintiffs. The Alexanders have also filed a third-party complaint against the Secretary. The third-party complaint asserts an APA claim against the Secretary. The Alexanders seek review of the 2008 decision by the BLM to accept GZ Corporation's Fort Yukon Map of Boundaries.[12] The Alexanders also may be attempting to assert a separate due process claim.[13]

Pursuant to Rule 15(a)(2), Federal Rules of Civil Procedure, the Alexanders now move to amend their third-party complaint. The Alexanders seek to add third-party defendants, add claims, and amend their existing claims asserted against the Secretary. Specifically, the Alexanders seek to add as defendants the Department of Interior, the BLM, and the BLM's Chief Cadastral Surveyor for Alaska. The proposed amended third-party complaint, while far from a model of clarity, appears to assert four separate causes of action. First, the Alexanders

---

[11]Tract 9 is a tract that GZ Corporation allegedly intends to convey to the City of Fort Yukon once the issues in this lawsuit are resolved.

[12]Defendants' . . . Third-Party Complaint at 29-31, ¶¶ 5-15, Docket No. 24.

[13]Id. at 31-32, ¶¶ 16-18.

propose to assert an APA claim seeking review of the 2008 acceptance of GZ Corporation's Fort Yukon Map of Boundaries and the 2014 approval of GZ Corporation's plan of survey.[14] Second, the Alexanders propose to assert an APA claim based on allegations that the third-party defendants failed to give the Alexanders adequate notice before accepting the Map of Boundaries in 2008 and approving the plan of survey in 2014.[15] Third, the Alexanders propose to assert claims that 43 U.S.C. § 1624, Part 2650, and 43 U.S.C. § 1632(b) are unconstitutional as applied to them.[16] Fourth, the Alexanders propose to assert an APA claim based on allegations that the third-party defendants have failed to act on a request for relief that the Alexanders submitted on August 23, 2018.[17]

Discussion

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999)). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." Id. The Secretary only argues that amendment would be futile. "Futility of amendment can, by itself, justify the denial

---

[14]Proposed . . . First Amended Third-Party Complaint at 42-43, ¶¶ 58-60, attached to Defendants/Third-Party Plaintiffs' Motion to File First Amended . . . Third-Party Complaint, Docket No. 61.

[15]Id. at 45-46, ¶ 70.

[16]Id. at 53-54, ¶ 103.

[17]Id. at 57-58, ¶¶ 117-127.

of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). "The test for futility 'is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6).'" Fresno Unified School Dist. v. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1179 (E.D. Cal. 2013) (quoting Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)). "'[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief.'" Id. (quoting Shroyer v. New Cingular Wireless Serv., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010)). Futility may also "include[] the inevitability of a claim's defeat on summary judgment.'" Calif. ex rel. Calif. Dep't of Toxic Substances Control v. Neville Chemical Co., 358 F.3d 661, 673–74 (9th Cir. 2004) (quoting Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987)).

The Secretary first argues that it would be futile to allow the Alexanders to amend as to their proposed APA claim based on allegations that the BLM's acceptance of the 2008 Map of Boundaries and approval of the 2014 plan of survey were arbitrary and capricious. The Secretary argues that amendment as to this claim would be futile because ANCSA gave the Secretary very limited duties with regards to the conveyance of lands. The Secretary contends that the Alexanders want him to determine that they are entitled to Tract 19A, but he argues that he has no duty or authority to determine entitlement to any Section 14(c) reconveyances.

"ANCSA extinguished all aboriginal title and claims of aboriginal title to lands in Alaska in exchange for the distribution of $962,500,000 and over forty million acres of land to Alaska Natives." Chickaloon-Moose Creek Native Ass'n, Inc. v. Norton, 360 F.3d 972, 974 (9th Cir. 2004). "ANCSA did not convey lands directly to village or regional corporations, but

provided a method for accomplishing transfer." Id. Pursuant to ANCSA, public lands were withdrawn and then village and regional native corporations could select the lands to which they were entitled. After a selection was made by a village corporation, the Secretary was directed to determine how many acres the corporation was entitled to and then issue "a patent to the surface estate. . . ." 43 U.S.C. § 1613(a). If, however, the lands had not been surveyed, the Secretary was to convey lands to Native corporations by an "interim conveyance." 43 U.S.C. § 1621(j)(i). A patent would be issued once the lands in question had been surveyed. Id.

Section 14(c)(1) of ANCSA provided that once a village corporation received a patent, the corporation was to

> convey to any Native or non-Native occupant, without consider-ation, title to the surface estate in the tract occupied as of December 18, 1971 . . . as a primary place of residence, or as a primary place of business, or as a subsistence campsite, or as headquarters for reindeer husbandry[.]

43 U.S.C. § 1613(c)(1). Section 14(c) made provision for "such sums as may be necessary for the purpose of providing technical assistance to Village Corporations established pursuant to this chapter in order that they may fulfill the reconveyance requirements of this subsection." 43 U.S.C. § 1613(c). Section 14(c) authorized "[t]he Secretary [to] make funds available as grants to ANCSA or nonprofit corporations that maintain in-house land planning and management capabilities." Id.

The Secretary argues that he has limited authority under Section 14(c) and that he does not have the authority to make any determinations as to Section 14(c) reconveyances.

Moreover, the Secretary contends that once a village corporation has received a patent, the corporation has full legal title to the land and that he no longer has jurisdiction over the land. See West v. Standard Oil Co., 278 U.S. 200, 211–12 (1929) ("[t]he issue of the patent terminates the jurisdiction of the Department [of Interior] over the land").

The Secretary acknowledges that he has a duty to survey ANCSA land selections. Specifically, 43 U.S.C. § 1612(a) provides:

> The Secretary shall survey the areas selected or designated for conveyance to Village Corporations pursuant to the provisions of this chapter. He shall monument only exterior boundaries of the selected or designated areas at angle points and at intervals of approximately two miles on straight lines. No ground survey or monumentation will be required along meanderable water boundaries. He shall survey within the areas selected or designated land occupied as a primary place of residence, as a primary place of business, and for other purposes, and any other land to be patented under this chapter.

But, the Secretary argues that nothing in Section 1612(a) creates any duty to determine entitlement to any Section 14(c) reconveyance.

The Secretary also argues that there are no regulations that create a duty to determine the entitlement to a Section 14(c) reconveyance. The regulation governing village surveys can be found at 43 C.F.R. § 2650.5–4. Section 2650.5-4(b) provides that "[s]urveys will be made within the village corporation selections to delineate those tracts required by law to be conveyed by the village corporations pursuant to section 14(c). . . ." Section 2650.5-4(c)(1) provides that

> [t]he boundaries of the tracts described in paragraph (b) of this section shall be posted on the ground and shown on a map which

> has been approved in writing by the affected village corporation and submitted to the Bureau of Land Management. Conflicts arising among potential transferees identified in section 14(c) of the Act, or between the village corporation and such transferees, will be resolved prior to submission of the map.

The Secretary argues that it is thus clear that village corporations are to resolve any issues as to Section 14(c) claims prior to submitting a map of boundaries to the BLM. As such, the Secretary argues that the regulations do not impose any duty or authority upon him to determine entitlement to 14(c) reconveyances.

The regulations further provide for the development of a plan of survey after a map of boundaries has been approved:

> Lands shown by the records of the Bureau of Land Management as not having been conveyed to the village corporation will be excluded by adjustments on the map by the Bureau of Land Management. No surveys shall begin prior to final written approval of the map by the village corporation and the Bureau of Land Management. After such written approval, the map will constitute a plan of survey. Surveys will then be made in accordance with the plan of survey. No further changes will be made to accommodate additional section 14(c) transferees, and no additional survey work desired by the village corporation or municipality within the area covered by the plan of survey or immediately adjacent thereto will be performed by the Secretary.

43 C.F.R. § 2650.5-4(c)(2). The Secretary argues that this regulation does not create any duty on the BLM or him to determine entitlement to Section 14(c) reconveyances.

The Alexanders may have a plausible APA claim based on allegations that the BLM's acceptance of the 2008 Map of Boundaries and approval of the 2014 plan of survey were arbitrary and capricious. The Alexanders are not asking the Secretary to decide their

-9-

entitlement to Section 14(c) land. Rather, they are asking the court to review whether the BLM's conduct in connection with GZ Corporation's handling of Clarence Alexander's 14(c)(1) claim was arbitrary and capricious. But, the only difference between this proposed APA claim and the APA claim that the Alexanders pled in their original third-party complaint is that the proposed claim is asserted against the Secretary as well as the Department of Interior, the BLM, and the BLM's Chief Cadastral Surveyor. Adding these additional defendants is unnecessary. Thus, the Alexanders' motion to amend their third-party complaint to add additional defendants is denied as is their motion to amend their APA claim seeking review of the BLM's acceptance of the 2008 Map of Boundaries and approval of the 2014 plan of survey.

The Secretary next argues that amendment of the Alexanders' APA claims based on allegations that they were provided insufficient notice would be futile. First, the Secretary contends that the Alexanders are alleging that he had a duty to promulgate regulations that would have required that actual notice be given to 14(c)(1) applicants. As to that contention, while 43 U.S.C. § 1624 authorizes the Secretary "to issue and publish in the Federal Register, pursuant to subchapter II of chapter 5 of Title 5, such regulations as may be necessary to carry out the purposes of" ANCSA, Section 1624 "does not require the Secretary to publish regulations. . . . It merely 'authorizes' him to publish" regulations. Aleknagik Natives, Ltd. v. United States, 635 F. Supp. 1477, 1496 (D. Alaska 1985). The Secretary had no obligation to promulgate regulations concerning notice to 14(c)(1) applicants. Thus, the Alexanders' motion to amend their third-party complaint to add an APA claim based on allegations that the

Secretary had a duty to promulgate regulations concerning the provision of notice to 14(c)(1) applicants is denied as such amendment would be futile.

The Alexanders also appear to be proposing to assert an APA claim based on allegations that the third-party defendants had a duty to provide actual notice but either failed to provide any notice or provided insufficient notice. The Secretary disagrees that he had any duty to provide notice that a map of boundaries had been submitted or that a plan of survey had been approved. The Secretary contends that the Alexanders have not alleged that any statute or regulation required that such notice be provided nor, according to the Secretary, could they make such an allegation because there is no such statute or regulation. The Secretary points out that the BLM's internal policies provided that

> [t]he BLM will notify village residents of the acceptance of the Map [of Boundaries] and the commencement of the period for challenging the corporation's decisions by publishing a Public Notice in local and statewide newspapers and requesting that the local Postmaster post a Notice in the local Post Office. The BLM will also inform the Village Corporation of the acceptance in writing and circulate such notifications through ANCSA 14(c) support agencies.[18]

However, the Secretary argues that this notice was voluntarily given and not required by statute or regulation.[19]

---

[18] Amended Policy Statement for Preparation and Processing of the Map of Boundaries under ANCSA 14(c), Exhibit 3 at 6, Third-Party Defendant's Response in Opposition [etc.], Docket No. 70.

[19] There does not appear to be any factual dispute that the BLM gave the notice contemplated in this internal policy.

The Secretary is correct that there is no statute or regulation that required him or the BLM to provide actual notice to 14(c)(1) applicants that a map of boundaries had been submitted or that the BLM had approved a plan of survey. The Alexanders' motion to amend their third-party complaint to add an APA claim based on allegations that third-party defendants failed to provide notice or provided insufficient notice is denied as such amendment would be futile.

The Alexanders may also be attempting to assert a non-APA due process claim. If so, it is possible that the Alexanders might have a plausible <u>Bivens</u> due process claim, but that is not what they have alleged in their proposed amended third-party complaint.

The Secretary next argues that the proposed amendment to add as applied constitutional challenges to 43 U.S.C. § 1624,[20] 43 U.S.C. § 1632(b),[21] and 43 C.F.R. Part 2650[22] would be futile because such claims would be barred by the statute of limitations. The Secretary argues

---

[20]Section 1624 provides that "[t]he Secretary is authorized to issue and publish in the Federal Register, pursuant to subchapter II of chapter 5 of Title 5, such regulations as may be necessary to carry out the purposes of" ANCSA.

[21]Section 1632(b) provides that "[d]ecisions made by a Village Corporation to reconvey land under section 14(c) of the Alaska Native Claims Settlement Act . . . shall not be subject to judicial review unless such action is initiated before a court of competent jurisdiction within one year after the date of the filing of the map of boundaries as provided for in regulations promulgated by the Secretary."

[22]Part 2650 "provide[s] procedures for orderly and timely implementation of those provisions of the Alaska Native Claims Settlement Act of December 18, 1971 . . . which pertain to selections of lands and interests in lands in satisfaction of the land selections conferred by said Act upon Alaska Natives and Alaska Native corporations." 43 C.F.R. § 2650.0-1.

that the proposed constitutional claims would be untimely because they are not actually as applied claims, but rather are facial challenges. The Secretary points out that the Alexanders propose to allege that 43 U.S.C. § 1632(b) is "void for vagueness[,]"[23] and that Part 2650 and 43 U.S.C. § 1632(b) are "unduly vague[.]"[24] The Secretary also points out the Alexanders propose to allege that 43 U.S.C. § 1632(b) "fails to provide all persons of ordinary intelligence, what is required of him/her/them to protect his/her/their constitutionally protected property rights", "is unduly vague" regarding how and what procedures village corporations are to apply in implementing their obligations as to § 14(c)(1) applicants, that the definitions in the statute and regulations are inadequate because they do not define certain words and phrases, and that 43 U.S.C. § 1632(b) and Part 2650 are unconstitutional because they do not require notice or hearings for 14(c)(1) applicants.[25] The Secretary contends that these allegations are all facial challenges, not as applied challenges. The Secretary contends that facial challenges to ANCSA would be subject to the one-year statute of limitations found in 43 U.S.C. § 1609, which has long since expired. And, the Secretary contends that facial challenges to Part 2650 would be subject to the two-year statute of limitations found in 43 U.S.C. § 1632(a),[26] which has long

---

[23]Proposed . . . First Amended Third-Party Complaint at 48, ¶ 82, attached to Defendants/Third-Party Plaintiffs' Motion to File . . . First Amended Third-Party Complaint, Docket No. 61.

[24]Id. at 48, ¶ 83.

[25]Id. at 48, ¶¶ 82-83; 52, ¶¶ 97, 99.

[26]Section 1632(a) provides that "a decision of the Secretary under . . . the Alaska Native Claims Settlement Act . . . shall not be subject to judicial review unless such action
(continued...)

since expired. Even if the more generous statute in 28 U.S.C. § 2401(a), which is the general six-year statute of limitations for actions against the United States, applied, the Secretary argues that the Alexanders' proposed constitutional claims would be barred because more than six years has passed since these statutes and regulations were enacted.

It may be possible for the Alexanders to assert timely as applied constitutional claims. But that is not what they have alleged in their proposed third-amended complaint. The proposed constitutional claims are facial challenges, not as applied challenges. Thus, these proposed constitutional claims would be barred by the statute of limitations, and amending the third-party complaint to add these claims would be futile.

Finally, the Secretary argues that the Alexanders' amendment to add a claim under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld would be futile. This claim is based on a letter that the Alexanders sent to the Department of Interior and the Secretary in August 2018.[27] In the letter, the Alexanders requested that the Secretary require GZ Corporation to submit an amended Map of Boundaries that would in essence recognize Clarence Alexander's claim to Tract 19A.[28] The Secretary argues that there are at least two problems with this proposed claim.

---

[26](...continued)
is initiated before a court of competent jurisdiction within two years after the day the Secretary's decision becomes final. . . ."

[27]Exhibit A, Defendants/Third-Party Plaintiffs' Motion to File First Amended Answer [etc.], Docket No. 61.

[28]Id. at 5.

First, "the only agency action that can be compelled under the APA is action <u>legally required</u>." <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 63 (2004). As argued above, the Secretary contends that he has no obligation or authority to make determinations as to 14(c) reconveyances, which is what the Alexanders are asking him to do. Second, the Secretary argues that this claim would not be ripe yet as there has been no withheld or unduly delayed action. The Alexanders submitted their request to the Secretary on August 28, 2018. Any delay at this point in responding to the request would not be undue.

The court agrees with the Secretary that amending the third-party complaint to add this proposed claim would be futile at this point.

## Conclusion

Based on the foregoing, the Alexanders' motion to amend their third-party complaint is denied with leave to renew after plaintiffs have filed their amended complaint.[29]

DATED at Anchorage, Alaska, this 3rd day of January, 2019.

/s/ H. Russel Holland
United States District Judge

---

[29] The Alexanders may not simply amend their third-party complaint when they file an answer to plaintiffs' amended complaint. "Rule 14(a) expressly permits adding third party defendants to an action within fourteen days of filing the <u>original</u> answer; after that deadline, parties must seek leave of court." <u>Clear-View Technologies, Inc. v. Rasnick</u>, Case No. 13–cv–02744–BLF, 2015 WL 1307112, at *4 (N.D. Cal. March 23, 2015).