WO IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GWITCHYAA ZHEE CORPORATION and )
GWICHYAA ZHEE GWICH'IN TRIBAL )
GOVERNMENT, )
)
Plaintiffs, )
)
vs. )
)
CLARENCE ALEXANDER and DACHO )
ALEXANDER, )
) No. 4:18-cv-0016-HRH
Defendants/Third-Party Plaintiffs, )
)
vs. )
)
DAVID BERNHARDT, Acting Secretary )
of Interior, in his official capacity, )
)
Third-Party Defendant. )
_____ )

O R D E R

Third-Party Defendant's Motion to Dismiss

Third-party defendant Secretary of Interior David Bernhardt moves to dismiss the

second amended third-party complaint.[1]  This motion is opposed by third-party plaintiffs

Clarence and Dacho Alexander.[2]  Oral argument was requested and has been heard.

---

[1]Docket No. 141.

[2]Docket No. 166.  As the Secretary points out, the Alexanders' opposition does not
comply with Local Rules 7.4(a)(1) and 7.5(a)(3).  But, the court declines to strike the
(continued...)

<u>Background</u>

This case involves a dispute over the boundaries of Clarence Alexander's § 14(c)(1) claim. Plaintiffs Gwitchyaa Zhee Corporation and Gwichyaa Zhee Gwich'in Tribal Government allege that in 1984 Clarence Alexander submitted a § 14(c)(1) claim for a parcel that was approximately 5.9 acres.[3] Plaintiffs allege that in 2008, in order to comply with their obligations under § 14(c)(1) of the Alaska Native Claims Settlement Act ("ANCSA"), they submitted a "Map of Boundaries" to the Bureau of Land Management ("BLM") "that identified . . . 14(c)(1) claims . . . encompassing Fort Yukon and its nearby surroundings" (the "FYMOB").[4] Plaintiffs allege that "[i]n April 2008, the BLM accepted GZ Corporation's Map of Boundaries."[5] Plaintiffs allege that the BLM published notices in the Anchorage and Fairbank papers advising 14(c) claimants that they had until April 11, 2008 to bring a court challenge to the boundaries shown on the FYMOB.[6] Plaintiffs also allege that "[t]he BLM . . . sent a notice to be posted on the bulletin board of Fort Yukon's U.S. Post Office."[7]

---

[2](...continued)
Alexanders' opposition for failure to comply with these two rules.

[3]First Amended Complaint at 3, ¶¶ 8, 10, Docket No. 95.

[4]<u>Id.</u> at 5, ¶ 13.

[5]<u>Id.</u> at 6, ¶ 16.

[6]<u>Id.</u> at 6-7, ¶ 17.

[7]<u>Id.</u> at 7, ¶ 18.

Plaintiffs allege that "[d]uring the summers of 2009-2011, a surveyor was hired to conduct a precise survey of the § 14(c)(1) claims identified in" the FYMOB.[8]  Plaintiffs allege that the Alexanders convinced the surveyor to include more acreage for Clarence Alexander's § 14(c) claim than he had included in his 1984 application.[9]  Plaintiffs allege that the boundaries of Clarence Alexander's § 14(c) claim were corrected in 2014 and that in 2016, GZ Corporation executed a quitclaim deed to Clarence Alexander for Tract 19.[10] Plaintiffs allege that the survey documents show Tract 19 as a 5.77 acre plot:[11]



[8] Id. at 8, ¶ 22.

[9] Id.

[10] Id. at 8, ¶ 23; 10-11, ¶¶ 27-28.

[11] Id. at 8-9, ¶ 23 and Exhibit D at 2.

Plaintiffs allege that the Alexanders "have moved their belongings not only onto Tract 19, but also Tracts 9, 19A, and the triangle-shaped parcel of land at the end of Barge Landing Road."[12] Plaintiffs seek to eject the Alexanders "from Tract 9, Tract 19A, and the triangle-shaped parcel of land at the end of the Barge Landing Road where it meets the Yukon River. . . ."[13]

The Alexanders, however, allege that the boundaries on the FYMOB are incorrect and that Clarence Alexander's § 14(c)(1) claim includes "an area consisting of approximately 8.79 acres, plus the Joe Ward barge area,"[14] the triangle-shaped parcel at the end of Barge Landing Road. The Alexanders also allege that there are issues as to whether plaintiffs complied with the regulatory requirements for § 14(c)(1) claims. In addition, the Alexanders contend that they have obtained documents via FOIA requests that show that the acreage of Tract 19 was reduced sometime between 2011 and 2014, that the BLM permitted GZ Corporation to "replat" Tract 19 in 2013-2014, and that this replatting resulted in the reduction of Tract 19, the relocation of Tract 9, and the creation of Tract 19A.[15]

The Alexanders' second amended third-party complaint against Secretary of Interior David Bernhardt contains three counts. Count I is a due process claim based on the BLM's

---

[12]Id. at 10, ¶ 28.

[13]Id. at 12, ¶ 33.

[14]Third-Party Plaintiffs' Second Amended Third-Party Complaint at 3, ¶ 16, Docket No. 121.

[15]Id. at 10-11, ¶¶ 68-73.

2008 acceptance of the FYMOB. Count II is a due process claim based on the BLM's actions in 2013-2014. Count III contains APA claims based on the BLM's acceptance of the FYMOB in 2008 and the BLM's conduct in 2014-2014 in connection with the alleged replatting. The Alexanders seek declaratory and injunctive relief on their third-party claims.

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, the Secretary now moves to dismiss the Alexanders' third-party claims.

## Discussion

As an initial matter, the Secretary contends that the Alexanders have not pled any non-APA, due process claims, even though the court permitted them to do so. The Secretary argues that a fair reading of the Alexanders' amended third-party complaint shows that they have only alleged APA claims. The Secretary points out that the Alexanders allege that "[t]his third-party action is brought under 28 USC § 1331 and 5 USC § 702"[16] and then they incorporate this allegation into each of their three separate counts.[17] The Secretary argues that the APA provides the necessary waiver of sovereign immunity and 28 U.S.C. § 1331 gives the court jurisdiction to entertain APA claims. Thus, the Secretary argues that the Alexanders' claims should all be considered APA claims and be governed by Local Rule 16.3, which applies to APA claims. See Al Otro Lado, Inc. v. Nielsen, 327 F. Supp. 3d 1284,

---

[16]Id. at 1, ¶ 1.

[17]Id. at 4, ¶ 23; 10, ¶ 67; 12, ¶ 86.

1316 (S.D. Cal. 2018) (treating all of the plaintiffs' claims as APA claims because "[a]lthough the Complaint purports to bring a separate claim for violation of the Plaintiffs' 'procedural due process rights under the Fifth Amendment,' that claim expressly incorporates the alleged APA violations").

The Alexanders have alleged non-APA, due process claims in Counts I and II. For example, in Count I, they allege that "BLM's 2008 final action approving GZ Corp.'s facially conflicting Tract 19 boundaries denied [them] procedural due process and equal protection in violation of the Fifth Amendment Due Process Clause[.]"[18]  In Count II, they allege that "BLM's 2013-2014 alterations denied [them] procedural due process and equal protection in violation of the Fifth Amendment Due Process Clause[.]"[19]

The Secretary next moves to dismiss the Alexanders' due process claims in Count I and Count II on the grounds that they cannot assert non-APA, due process procedural claims.[20]  The Secretary acknowledges that the court has already ruled to the contrary in its

---

[18]Id. at 10, ¶ 65.

[19]Id. at 12, ¶ 84.

[20]This is a Rule 12(b)(6) argument.  "'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff."  Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

order on the Alexanders' motion for reconsideration,[21] but the Secretary urges the court to revisit this issue. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988) (citation omitted) ("[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice"). The court, however, declines to revisit this issue, particularly in light of the Ninth Circuit's recent observation that while "[i]t is true that the APA is the general mechanism by which to challenge final agency action[,] . . . this does not mean the APA forecloses other causes of action." Sierra Club v. Trump, 929 F.3d 670, 699 (9th Cir. 2019).

The Secretary next moves to dismiss all of the Alexanders' claims on statute of limitations grounds.[22] As an initial matter, the Alexanders argue that the Secretary is

_____

[21]Order re Third-Party Plaintiffs' Motion for Reconsideration at 3-4, Docket No. 119.

[22]This is a Rule 12(b)(6) argument. It is not a Rule 12(b)(1) argument as the parties contend. First of all, this is not a case in which "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits[.]" Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). Secondly, the statute of limitations in Section 1632(a) is not jurisdictional. In order for a statute of limitations to be jurisdictional "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional. . . ." United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1632 (2015). The Secretary contends that Section 1632(a) is jurisdictional because it provides that the challenged action "shall not be subject to judicial review unless such action is initiated" within two years. But, the Court has found such mandatory language to "be of no consequence." Id. Section 1632(a) "'reads like an ordinary, run-of-the-mill statute of limitations,' spelling out a litigant's filing obligations without restricting a court's authority." Id. at 1633 (quoting Holland v. Florida, 560 U.S.

(continued...)

-7-

equitably estopped from asserting a statute of limitations defense. "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.'" Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011) (quoting Collins v. Gee West Seattle LLC, 631 F.3d 1001, 1004 (9th Cir. 2011)). "The doctrine 'focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.'" Id. (quoting Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000)). The Alexanders have the

> burden of pleading and proving the following elements of equitable estoppel:
>
> > "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."

Id. (quoting Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991)). "Additionally, when estoppel is sought against the government, 'there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government.'" Id. (quoting Bolt, 944 F.2d at 609).

---

[22](...continued)
631, 647 (2010). But because the Secretary relies on evidence beyond the pleadings to argue that the statute of limitations has run, the court employs the summary judgment standard to decide the statute of limitations issue. Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1207 (9th Cir. 2007). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The Alexanders' argument focuses on whether there has been affirmative misconduct by the government. The only affirmative misconduct that they appear to raise in connection with the BLM's acceptance of the FYMOB in 2008 is that the BLM should not have accepted the FYMOB because GZ Corporation had not posted Clarence Alexander's § 14(c) claim "on the ground" as required by regulation. But, the failure to comply with regulatory requirements is not affirmative misconduct that causes a serious injustice. Id. Rather, it is the basis for an APA claim. Thus, to the extent the Alexanders' equitable estoppel argument is based on their contention that the BLM improperly accepted the FYMOB in 2008, that argument fails.

As for the 2013-2014 conduct at issue here, the Alexanders argue that the BLM's written statements in 2014 on Sheets 1-2 of recorded Plat 2014-78 materially misrepresent the survey history for Tract 19, Tract 19A, and Tract 9. Sheet 1 shows Tract 19, Tract 19A, and Tract 9.[23] On Sheet 1, the BLM representative stated:

> This survey was executed by Eric Stahlke, Registered Alaska Land Surveyor . . . for Tanana Chiefs Conference, July 19 through September 10, 2011, in accordance with the specifications set forth in the Manual of Surveying Instructions (2009), Special Instructions dated April 27, 2011, approved June 6, 2011, . . . and Notice to Proceed dated July 18, 2011.
>
> * * *
>
> The survey represented by this plat, sheets 1-30, having been properly executed and examined, is hereby accepted for having

---

[23]Id.

> fulfilled the requirements of Section 14(c) of the Alaska Native
> Claims Settlement Act.[24]

The Alexanders argue that these statements are misrepresentations because Stahlke did not survey Tract 19A in 2011. Rather, the Alexanders contend that Stahlke only surveyed Tract 19, as shown on Sheet 5 of 13 of the Plan of Survey.[25] The Alexanders argue that Sheets 1-2 conceal that in 2011 Stahlke never surveyed Tract 19A because it did not yet exist and that Tract 19A was created administratively in 2013-2014, and not in accordance with the Manual of Surveying or the Special Instructions.

But this argument fails. As is discussed in more detail in the order on the cross-motions for summary judgment, which is being entered contemporaneously with this order, there were no misrepresentations on the recorded plat. All the survey work had been done in 2011. All that occurred in 2013/2014 was that GZ Corporation was working with the BLM to ensure that the FYMOB matched the plat that was going to be recorded.

If the Secretary is not equitably estopped from asserting a statute of limitations defense, which he is not, then the Secretary argues that the Alexanders' claims are all subject to the two-year statute of limitations in 43 U.S.C. § 1632(a). Section 1632(a) provides, in relevant part:

> Except for administrative determinations of navigability for
> purposes of determining ownership of submerged lands under
> the Submerged Lands Act [43 U.S.C.A. §§ 1301 et seq., 1311 et

---

[24]Docket No. 86-2 at 9.

[25]Id. at 70.

seq.], a decision of the Secretary under this chapter or the Alaska Native Claims Settlement Act [43 U.S.C.A. § 1601 et seq.] shall not be subject to judicial review unless such action is initiated before a court of competent jurisdiction within two years after the day the Secretary's decision becomes final or December 2, 1980, whichever is later[.]

43 U.S.C. § 1632(a).

The Secretary's statute of limitations argument is based on his contention that the Alexanders are generally alleging that they did not have sufficient notice of the GZ Corporation's decision not to convey all of the land that Clarence Alexander was claiming. Based on that contention, the Secretary argues that the Alexanders had "notice" of their claims more than two years prior to filing their third-party complaint and thus their third-party claims are not timely.[26]

"[A] limitations period begins to run when 'the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Aloe Vera of America, Inc. v. United States, 699 F.3d 1153, 1159 (9th Cir. 2012) (quoting Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009)).  This "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." Merck & Co. v. Reynolds, 559 U.S. 633, 648 (2010).

---

[26]The Secretary does not argue that the notice that plaintiffs allege was provided in 2008 when the FYMOB was submitted to the BLM was adequate or comported with due process.  But, the Secretary does point out that the court has already held that "there is no statute or regulation that requires him or BLM to provide actual notice to 14(c)(1) applicants that a map of boundaries had been submitted or that BLM had approved a plan of survey." Order re Defendants/Third-Party Plaintiffs' Motion to Amend at 12, Docket No. 93.

Here, there is undisputed evidence that the Alexanders were aware by at least November 14, 2011 that Clarence Alexander's 14(c) claim did not include all the land that he believed that it should. Specifically, on November 14, 2011, Dacho Alexander sent a letter to the President of the Tanana Chiefs Conference about "our family's land being taken from us during the 14(c) process."[27] Because the Alexanders knew of the injury that is the basis of their third-party claims by November 2011, they had until November 2013 to file their third-party claims against the Secretary, if the two-year statute of limitations in Section 1632(a) applies.

But, the Alexanders argue that the two-year statute of limitations in Section 1632(a) does not apply to their third-party claims. Rather, they argue that the statute of limitations in 28 U.S.C. § 2401(a) applies to these claims Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The Alexanders argue that Section 1632(a) did not repeal Section 2401(a) because the two statutes can coexist. At the very least, the Alexanders argue that Section 2401(a) would apply to their APA claims in Count III. See Shiny Rock Min. Corp. v. United States, 906 F.2d 1362, 1364 (9th Cir. 1990) (quoting Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir. 1988)) ("28 U.S.C. § 2401(a) 'applies to

---

[27]Exhibit 3 at 13, Third-Party Defendant's Memorandum in Support of Motion to Dismiss Third-Party Complaint, Docket No. 142.

actions brought under the APA which challenge a regulation on the basis of a procedural irregularity'").

The Alexanders are correct that Section 1632(a) and Section 2401(a) can coexist, but that does not answer the question of which statute of limitations applies to their third-party claims. As the Secretary points out, "when legislation contains its own statute of limitations, the more specific limitation preempts a more general statute of limitations." Sisseton-Wahpeton Sioux Tribe, of Lake Traverse Indian Reservation, North Dakota and South Dakota v. United States, 895 F.2d 588, 594 (9th Cir. 1990). Here, ANCSA contains its own statute of limitations in Section 1632(a) that applies to the kind of claims the Alexanders assert against the Secretary. This includes the Alexanders' APA claims. "Unless another statute prescribes otherwise, a suit challenging final agency action pursuant to section 704 must be commenced within six years after the right of action first accrues." Harris v. F.A.A., 353 F.3d 1006, 1009 (C.A.D.C. 2004) (emphasis added). Here, another statute, namely Section 1632(a) of ANCSA, prescribes otherwise, which means that the two-year statute of limitations in Section 1632(a) applies to all of the Alexanders' third-party claims.

The Alexanders then attempt to avoid the application of Section 1632(a) to their claims by arguing that Section 1632(a) only applies to pre-patent § 14(c) claims, and their claims are all post-patent § 14(c) claims. The Alexanders argue that the BLM's 2008 acceptance of the FYMOB and its decision in 2013-2014 to reduce Tract 19 were not Section 1632(a) decisions because once a village corporation has received a patent for its ANCSA

selections, the corporation has full legal title to the land and the Secretary no longer has jurisdiction over the land. <u>See</u> <u>West v. Standard Oil Co.</u>, 278 U.S. 200, 211–12 (1929) ("[t]he issue of the patent terminates the jurisdiction of the Department [of Interior] over the land"). The Alexanders argue that after June 27, 2007, which is when the Department of Interior issued a patent to GZ Corporation for its selected land, none of the Secretary's decisions could be considered Section 1632(a) decisions.

This argument fails. Section 1632(a) plainly states that the two-year statute of limitations applies to "a decision of the Secretary under . . . the Alaska Native Claims Settlement Act. . . ." The decisions that the Alexanders are challenging here are decisions made by the Secretary <u>under</u> ANCSA.[28]

The Alexanders next attempt to save their untimely third-party claims by arguing that the continuing violations doctrine applies here. The Alexanders argue that the Secretary has continuously violated 43 C.F.R. § 2650.5-4(c)(1) and (c)(2) since 2008. The regulations in Section 2650.5-4 relate to village surveys. Subsection (b) provides that "[s]urveys will be made within the village corporation selections to delineate those tracts required by law to be

_____

[28]The Secretary also seems to believe that the Alexanders are arguing that Section 1632(a) only applies to decisions of the Secretary and not to decisions by the BLM. While the court did not read the Alexanders' opposition brief as making such an argument, if they did, such an argument would fail as the Secretary has properly delegated his authority to the BLM. 43 C.F.R. § 2650.0-5(b).

conveyed by the village corporations pursuant to section 14(c) of" ANCSA. Subsection (c)(1) provides in pertinent part:

> The boundaries of the tracts described in paragraph (b) of this section shall be posted on the ground and shown on a map which has been approved in writing by the affected village corporation and submitted to the Bureau of Land Management. Conflicts arising among potential transferees identified in section 14(c) of the Act, or between the village corporation and such transferees, will be resolved prior to submission of the map.

The Alexanders allege that the BLM violated the mandatory requirement that boundaries of 14(c) tracts be "posted on the ground" and the mandatory requirement that conflicts be resolved prior to the submission of a map of boundaries when it accepted the FYMOB in 2008.[29] The Alexanders argue that the Secretary "violated the first sentence of § 2650.5-4(c)(1) in 2008 when BLM accepted GZ Corp.'s conflicting FYMOB documents showing non-posted, conflicting boundaries for Tract 19."[30] The Alexanders argue that the BLM has "failed to abide" by the mandatory requirement in the first sentence of Subsection (c)(1) since 2008[31] and thus the continuing violation doctrine applies to their 2008 claims.

"The continuing violations doctrine functions as an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of the limitations period." Bird

---

[29]Third-Party Plaintiffs' Second Amended Third-Party Complaint at 8, ¶¶ 53-54, Docket No. 121.

[30]Third-Party Plaintiffs' Opposition to Third-Party Defendant's Motion to Dismiss at 17, Docket No. 166.

[31]Id. at 18.

v. Dep't of Human Services, 935 F.3d 738, 746 (9th Cir. 2019) (citation omitted). The Ninth

Circuit has "recognized two applications of the continuing violations doctrine: first, to a

series of related acts, one or more of which falls within the limitations period, and second,

to the maintenance of a discriminatory system both before and during [the limitations]

period." Id. (citation omitted). It is not entirely clear which application of the doctrine the

Alexanders are attempting to rely on here. To the extent they are relying on the "serials acts

branch," the Ninth Circuit recently observed that "[e]xcept for a limited exception for hostile

work environment claims—not at issue here—the serial acts branch is virtually non-existent."

Id. at 748. As for "the systematic branch," the Ninth Circuit has "consistently refused to

apply the systematic branch to rescue individualized claims that are otherwise time-barred."

Id. The Alexanders are asserting individualized claims. Thus, the continuing violations

doctrine cannot rescue their untimely 2008 claims.

The Alexanders also argue that the continuing violations doctrine applies to their

claims based on the BLM's conduct in 2013-2014. As set out above, the Alexanders allege

that in 2013-2014, the BLM created Tract 19A, reduced Tract 19, and repositioned Tract 9.

In doing so, the Alexanders contend that the BLM violated 43 U.S.C. § 1601(b), which is a

provision in the Congressional findings and declaration of policy section of ANCSA.

Specifically, the Alexanders point to the declaration that the settlement of land claims

"should be accomplished . . . with maximum participation by Natives in decisions affecting

their rights and property[.]"  43 U.S.C. § 1601(b).  This objective was reiterated in the

regulations promulgated by the Secretary.  43 C.F.R. § 2650.0-2 provides:

> The program of the Secretary is to implement such provisions in keeping with the congressional declaration of policy that the settlement of the Natives' aboriginal land claims be fair and just and that it be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation and with maximum participation by Natives in decisions affecting their rights and property.

The Alexanders contend that the BLM violated this objective in 2013-2014 because it failed

to give them notice of the replatting process and fraudulently concealed the replatting

process.  The Alexanders argue that the continuing violations doctrine applies to their 2013-

2014 claims because "the continuing violations doctrine applies when a court determines that

a statute or regulation is most naturally read as treating injuries as ongoing or continually

accruing."  Texas v. United States, 891 F.3d 553, 561–62 (5th Cir. 2018).  The Alexanders

argue that their injuries from the replatting process in 2013-2014 are ongoing and thus their

claims based on the BLM's conduct in 2013-2014 are timely.  But, the Ninth Circuit has

"repeatedly held that a 'mere continuing impact from past violations is not actionable.'"

Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting Grimes v. City and County of

San Francisco, 951 F.2d 236, 238–39 (9th Cir. 1991)).

The continuing violations doctrine also cannot save the Alexanders' APA claims in

Count III.  The continuing violations doctrine "is not applicable in the context of an APA

claim for judicial review." <u>Mishewal Wappo Tribe of Alexander Valley v. Jewell</u>, 84 F. Supp. 3d 930, 942 (N.D. Cal. 2015) (citation omitted).

The Alexanders next argue that all of their claims are timely because they are entitled to equitable tolling. "'Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim.'" <u>Coppinger-Martin v. Solis</u>, 627 F.3d 745, 750 (9th Cir. 2010) (quoting <u>Santa Maria v. Pac. Bell</u>, 202 F.3d 1170, 1178 (9th Cir. 2000)). "Equitable tolling does not depend on the defendant's wrongful conduct; rather, it focuses on whether the plaintiff's delay was excusable." <u>Id.</u> "'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" <u>Id.</u> (quoting <u>Santa Maria</u>, 202 F.3d at 1178). "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" <u>Okafor v. United States</u>, 846 F.3d 337, 340 (9th Cir. 2017) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)).

The Alexanders argue that they have been diligent in pursuing their rights. They contend that they first became aware that Clarence Alexander had not been given all the land he requested in his § 14(c) claim in 2011. They further contend that at that time they contacted GZ Corporation, the Tribe, the Tanana Chiefs Conference, and the BLM, all of

which told them that they had no legal recourse because ANCSA's one-year statute of limitations had run. As for the extraordinary circumstances prong, the Alexanders argue that there are many such circumstances here, including that 1) GZ Corporation did not give Clarence Alexander any hearing on his § 14(c) claim, 2) GZ Corporation did not post Tract 19 boundaries prior to compiling the FYMOB, 3) the BLM's acceptance of a non-compliant map of boundaries, and 4) the BLM's replatting process in 2013-2014, of which the Alexanders were unaware.

The Alexanders' equitable tolling argument fails because it is undisputed that the Alexanders had counsel by 2011. Although Dacho Alexander avers that this attorney (O'Brien) was a family friend and only helped them out by accompanying them to a meeting with the Tanana Chiefs Conference in November 2011,[32] the Alexanders claimed attorney-client privilege between O'Brien and Dacho Alexander.[33] This indicates that the Alexanders believed that O'Brien was helping them in his capacity as a lawyer, not simply as a family friend. "'[O]nce a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements.'" Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir. 2003) (quoting Leorna v. United States Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997)). Here, the statute of

_____

[32]Affidavit of Defendant Demetrie (Dacho) in Support of Defendants' Motion for Summary Judgment at 3, ¶ 10-16, Docket No. 164-2.

[33]Defendants' Response to Plaintiffs' First Request for Production at 7, Exhibit 3, Third-Party Defendant's Memorandum in Support of Motion to Dismiss Third-Party Complaint, Docket No.142.

limitations may have been tolled, but it was only tolled until 2011, which means that the Alexanders had until 2013 to file their third-party claims, which they did not do.

The Alexanders next argue that their claims did not actually accrue until 2017 or 2018. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). The Alexanders contend that it was not until counsel for GZ Corporation notified them in 2017 that they became aware of the existence of Tract 19A, which they seem to be contending is the first time they knew that Clarence Alexander's § 14(c) claim had been reduced in size. They also argue that their claims did not accrue until 2017 because that is when they were "injured." They suggest that they did not suffer any injury in connection with the creation of Tract 19A until plaintiffs sued them for ejectment. The Alexanders argue that whatever knowledge they had in 2011 is immaterial because the only thing they knew in 2011 was that the Joe Ward barge area had not been included as part of Clarence Alexander's § 14(c) claim. But, they contend that they did not know in 2011 that Tract 19 had been reduced by the creation of Tract 19A.

It is undisputed that the Alexanders knew in 2011 that the Joe Ward barge landing area had not been included in Clarence Alexander's § 14(c) claim.[34] What the Alexanders

_____

[34]The surveyor, Eric Stahlke, recapped a meeting that he and the president of the Tanana Chiefs Conference had with the Alexanders in November 2011 in an email to the BLM. AR at 100058-59, Docket No. 127-8 at pages 14-15. Stahlke stated that the Alexanders' position was "that the barge landing [should] be included as part of their
(continued...)

-20-

are arguing here is that they did not know the extent of their injury until 2017, that it was not until December of 2017 that they learned that Clarence Alexander's § 14(c) claim was even smaller than they thought. But, "[a] cause of action accrues even if 'the full extent of the injury is not then known.'" Gregg v. Hawaii, Dep't of Public Safety, 870 F.3d 883, 887 (9th Cir. 2017) (quoting Wallace v. Kato, 549 U.S. 384, 391 (2007)). The Alexanders knew by 2011 that they had claims based on Clarence Alexander's § 14(c) claim not including all the land he thought it should. They may not have known the full extent of the injury, but they knew they had been injured. Thus, their third-party claims accrued in 2011, not in 2017 as they contend. And because their third-party claims accrued in 2011, those claims had to be filed by 2013, which the Alexanders did not do. The Alexanders' claims against the Secretary are untimely and thus they are dismissed.[35]

## Conclusion

The Secretary's motion to dismiss is granted. The Alexanders' claims against the Secretary are dismissed as untimely. The Alexanders are not given leave to amend as they

---

[34](...continued)
14(c)(1) tract, known as Tract 19 on the Plan of Survey." Id. at 10059, Docket No. 127-8 at page 15.

[35]Because the Alexanders' claims are being dismissed as untimely, the court need not consider the Secretary's exhaustion of administrative remedies argument, the Secretary's argument that he had no duty or authority to determine entitlement to any § 14(c) reconveyances, or Secretary's argument that the Alexanders' due process claims in Count II should be dismissed to the extent that they seek declaratory or equitable relief to preclude an alleged deprivation of a property interest.

have had ample opportunity to plead their third-party claims and because amendment would

be futile.

DATED at Anchorage, Alaska, this 19th day of December, 2019.

/s/ H. Russel Holland
United States District Judge