IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GWITCHYAA ZHEE CORPORATION and GWICHYAA ZHEE GWICH'IN TRIBAL GOVERNMENT,<br><br>        Plaintiffs,<br><br>  vs.<br><br>CLARENCE ALEXANDER and DACHO ALEXANDER,<br><br>        Defendants and Third-Party Plaintiffs,<br><br>  vs.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior,<br><br>        Third-Party Defendant. | No. 4:18-cv-0016-HRH |

O R D E R

Motion for Summary Judgment;
Cross-Motion to Dismiss

Plaintiffs move for summary judgment.[1] This motion is opposed by defendants, and they cross-move to dismiss plaintiffs' complaint.[2] Defendants' cross-motion is opposed.[3] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 216.

[2]Docket No. 228.

[3]Docket No. 236.

Facts

Plaintiffs are Gwitchyaa Zhee Corporation ("GZ Corporation") and Gwichyaa Zhee Gwich'in Tribal Government ("the Tribal Government"). GZ Corporation is an Alaska Native Village corporation. The Tribe is a federally recognized tribe. Defendants are Clarence Alexander and his son, Dacho Alexander.

The land at issue in this case was once owned by the federal government. But, in 1971, "[t]he United States Congress enacted" the Alaska Native Claims Settlement Act (ANCSA). Ogle v. Salamatof Native Ass'n, Inc., 906 F. Supp. 1321, 1328 (D. Alaska 1995). "ANCSA extinguished the Native people of Alaska's claims to aboriginal land title, and in return federal lands and other consideration were transferred to Alaska Natives." Id. "In order to accomplish this purpose, the United States Congress created regional and village corporations that were intended to receive the lands conveyed." Id. Pursuant to ANCSA, public lands were withdrawn and then village and regional native corporations could select the lands to which they were entitled. Chickaloon-Moose Creek Native Ass'n, Inc. v. Norton, 360 F.3d 972, 974-75 (9th Cir. 2004). After a selection was made by a village corporation, the Secretary of Interior was directed to determine how many acres the corporation was entitled to and then issue "a patent to the surface estate. . . ." 43 U.S.C. § 1613(a). If, however, the lands had not been surveyed, the Secretary was to convey lands to Native corporations by an "interim conveyance." 43 U.S.C. § 1621(j)(1). A patent would

be issued once the lands in question had been surveyed. Id. Section 14(c)(1) of ANCSA provides that once a village corporation received a patent,

> the [c]orporation shall first convey to any Native or non-Native occupant, without consideration, title to the surface estate in the tract occupied as of December 18, 1971 . . . as a primary place of residence, or as a primary place of business, or as a subsistence campsite, or as headquarters for reindeer husbandry[.]

43 U.S.C. § 1613(c)(1).

"To facilitate the transfer of section 14(c) properties to lawful claimants, the Secretary of the Interior enacted regulations requiring the survey of the lands claimed by the villages." Ogle, 906 F. Supp. at 1328. 43 C.F.R. § 2650.5–4 "requires village corporations to file a map delineating its land selections, including tracts that are to be reconveyed under section 14(c)." Id. "The map is then used by the Bureau of Land Management ('BLM') as a 'plan of survey.'" Id. Once the surveys were completed, the BLM was to submit an official plat to the village corporation showing the boundaries for all § 14(c) claims. After the village corporation approved the official plat, the village corporation was to issue deeds to the § 14(c) claimants.

On January 7, 1974, Clarence purchased a "cabin located down on native land by a slough known as McInroy Slough or Joe Ward Slough" from Jim Ward, Sr.[4] Clarence avers that in 1974, he and his wife "lived in Jimmie Ward Sr.'s house, and also exclusively

---

[4]Exhibit D at 1, Plaintiffs' Reply in Support of Motion for Summary Judgment on Ejectment, Docket No. 231.

-3-

Case 4:18-cv-00016-HRH   Document 239   Filed 06/02/20   Page 3 of 18

occupied the Ward property, including the area known as the Joe Ward barge area and the pond area[.]"[5] Clarence avers that his family lived in the house until 1977 and thereafter rented the house to others.[6]

On October 30, 1984, Clarence submitted an ANCSA § 14(c) application to GZ Corporation.[7] As required, there was a sketch map attached to Clarence's § 14(c) application which indicated that he was claiming a triangular-shaped parcel, approximately 5.77 acres in size, that did not include the Joe Ward barge landing area or the pond.[8] Clarence has testified that the handwriting on this sketch map is not his and that he believed that his § 14(c) application had a different sketch map attached.[9] But, the Alexanders have not been able to come forward with a copy of this other sketch map.

On March 22, 1985, GZ Corporation received an interim conveyance of the lands at issue in this lawsuit.[10] Approximately 4,361 acres of land were conveyed to GZ Corporation in this interim conveyance.[11]

---

[5] Affidavit of Defendant Clarence L. Alexander [etc.] at 3, ¶ 22, Docket No. 228-2.

[6] Id. at 4-5, ¶¶ 25-26; 36.

[7] Exhibit A, Plaintiffs' Motion for Leave to Amend Complaint, Docket No. 81.

[8] Id. at 12.

[9] Deposition of Clarence Alexander at 78:1-80:21, Exhibit C, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

[10] Exhibit A, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

[11] Id. at 5. GZ Corporation also received two other interim conveyances of ANCSA
(continued...)

On August 6, 1990, GZ Corporation approved Clarence's § 14(c) application.[12]

On June 27, 1994, GZ Corporation transferred four and half townships of surface estate to the Tribal Government.[13] There is no information in the record as to what lands were included in this 1994 transfer. However, plaintiffs allege that the 1994 Transfer Agreement "purports to transfer GZ Corporation's title in the land at issue in this lawsuit to the Tribe[,]" but that "exempt from that transfer" is "any land GZ Corporation is required to transfer as a § 14(c)(1) claim."[14]

On March 7, 1996, plaintiffs and the City of Fort Yukon reached a settlement, whereby 144.97 acres of the land that had been transferred to the Tribal Government was transferred to the City of Fort Yukon.[15] The land at issue in this lawsuit was not part of the 144.97 acres.[16]

On June 27, 2007, the patent for the lands involved in this lawsuit was issued to GZ Corporation.[17]

---

[11](...continued)
lands. Exhibit B at 1, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

[12]Exhibit D, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

[13]Docket No. 29 at 14.

[14]First Amended Complaint at 5, ¶ 12, Docket No. 95.

[15]Docket No. 29 at 14.

[16]Docket No. 29 at 17-21.

[17]Exhibit B, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

On April 11, 2008, GZ Corporation submitted the Fort Yukon Map of Boundaries ("FYMOB") to the BLM.[18] Clarence's § 14(c) claim was shown on the FYMOB as claim 002R. The boundaries of claim 002R matched the sketch map that was included with Clarence's § 14(c) application.[19]

On May 1, 2009, the BLM "approved" the FYMOB "to be used as the plan of survey for the ANCSA 14(c) parcels shown hereon."[20]

The April 27, 2011 "special instructions" for the Fort Yukon survey indicated that Clarence's § 14(c) claim (Tract 19) consisted of "8.79+- acres" and that it was "shown on Sheet 5 of the Plan of Survey."[21]

By November 2011, defendants "knew . . . that Clarence's § 14(c) claim did not include all of the land that he thought it should."[22]

On June 2, 2014, the BLM issued its "Section 14(c) plat" for GZ Corporation, which showed Clarence's § 14(c) claim as Tract 19, the area around the pond as Tract 19A, and the barge landing area as part of Tract 9.[23]

---

[18]Exhibit E, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

[19]AR 69, Docket No. 130.

[20]AR 100003, Docket No. 127-1 at page 4 of 13.

[21]AR 100023, Docket No. 127-2 at page 11 of 22.

[22]Order re Cross-Motions for Summary Judgment at 38, Docket No. 211.

[23]Exhibit G at 1, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

On January 29, 2016, GZ Corporation issued a quitclaim deed to Clarence for "Tract 19 located in Section 12, T20N, R11E, Fairbanks Meridian, as described at pages 1 and 2 of Plat No. 2014-78 recorded June 10, 2014, in the Fairbanks Recording District."[24] The quitclaim deed was recorded with the Alaska Department of Natural Resources Recorder's Office, Fairbanks Recording District on February 2, 2016.[25]

On June 16, 2017, plaintiffs allege that they "wrote a letter to the Alexanders asking them to remove all personal equipment and debris from Tract 19A by June 30, 2017."[26] Plaintiffs allege that defendants did not remove their possessions from Tract 19A by June 30, 2017 and so, plaintiffs allege that on September 28, 2017, they wrote another letter to defendants demanding that they remove all of their possessions and exit Tract 19A by October 9, 2017.[27] Defendants did not do so and thus on February 26, 2018, plaintiffs commenced this action, asserting a single ejectment claim against defendants.

On January 8, 2019, plaintiffs filed an amended complaint in which they allege that defendants have moved their belongings onto not only Tract 19A but also a portion of Tract 9 and "the triangle-shaped parcel of land at the end of the Barge Landing Road."[28] Plaintiffs

---

[24]Exhibit H at 1, Plaintiffs' Motion for Summary Judgment [etc], Docket No. 153.

[25]Id.

[26]Complaint at 4, ¶ 16, Attachment A, Notice of Removal, Docket No. 1.

[27]Id. at 5, ¶ 17.

[28]First Amended Complaint at 10, ¶ 28, Docket No. 95.

-7-

seek to eject defendants "from Tract 9, Tract 19A, and the triangle-shaped parcel of land at the end of the Barge Landing Road where it meets the Yukon River. . . ."[29]

On December 19, 2019, the court granted plaintiffs' motion for summary judgment and held that "[t]he Alexanders are time-barred from seeking judicial review of Clarence's § 14(c) claim."[30]

Plaintiffs now move for summary judgment on their ejectment claim. Pursuant to Rule 12(b)(6), defendants now move to dismiss plaintiffs' first amended complaint. To the extent that defendants are seeking to dismiss plaintiffs' first amended complaint, the court has already determined that plaintiffs' first amended complaint states a plausible claim for ejectment.[31] However, as defendants themselves appear to recognize, their motion to dismiss is in substance a cross-motion for summary judgment in which defendants advance their adverse possession affirmative defense.[32] The court has thus treated defendants' motion to dismiss as a cross-motion for summary judgment.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

---

[29]Id. at 12, ¶ 33.

[30]Order re Cross-motions for Summary Judgment at 38, Docket No. 211.

[31]Id. at 35.

[32]Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-motion to Dismiss at 2, Docket No. 237.

initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the nonmovant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). When, as here, the parties have filed cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

"In order to prove their ejectment claim," plaintiffs are "required to show that they ha[ve] a 'legal estate' in the property and 'a present right to possession of the property.'" Fink v. Municipality of Anchorage, 379 P.3d 183, 190 (Alaska 2016) (quoting AS 09.45.630). Plaintiffs contend that they can meet these requirements as to the land in

question, Tract 9, Tract 19A, and the triangle-shaped parcel of land at the end of the Barge Landing Road.

Defendants disagree. Defendants contend that they have gained title to the property in question by adverse possession. Adverse possession is a defense to an ejectment claim. Frost v. Ayojiak, 957 P.2d 1353, 1358 (Alaska 1998).

As an initial matter, plaintiffs contend that defendants are improperly seeking to amend their pleadings at this late date to add an adverse possession defense. This contention is incorrect. Defendants asserted adverse possession as an affirmative defense in their answer to plaintiffs' first amended complaint.[33] Defendants have properly raised adverse possession as a defense to plaintiffs' motion for summary judgment on their ejectment claim.

The Alaska statutes which govern adverse possession, AS 09.10.030 and AS 09.45.052(a), were amended in 2003. "[P]re-2003 adverse possession law applies to this case." Yuk v. Robertson, 397 P.3d 261, 264 (Alaska 2017).

The pre-2003 version of AS 09.10.030 provided:

> "A person may not bring an action for the recovery of real property, or for the recovery of the possession of it unless the action is commenced within 10 years. An action may not be maintained for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action."

---

[33]Defendants' Answer to First Amended Complaint; Affirmative Defenses; and Counterclaims at 20, ¶ 16, Docket No. 101.

-10-

Id. (quoting former AS 09.10.030 (1994), amended by ch. 147, §§ 1, 2, SLA 2003). "The statute was in form simply a statute of limitations, literally saying only that landowners had ten years to recover property from a person who was wrongfully in possession." Prax v. Zalewski, 400 P.3d 116, 119 (Alaska 2017) (citation omitted). However, the Alaska Supreme Court "interpreted the statute as the basis for establishing new title through adverse possession, whereby the adverse possessor—after ten years of actual, open, notorious, continuous, exclusive, and hostile possession—could establish new title to the property." Id.

The pre-2003 version of "AS 09.45.052[] allowed certain types of good-faith claimants to take title after a shorter period of possession[,]" providing that "[t]he uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more is conclusively presumed to give title to the property except as against the state or the United States.'" Id. (quoting former AS 09.45.052 (1991) (emphasis added), amended by ch. 147, § 3, SLA 2003). "An adverse possessor with 'color and claim of title' is one who in good faith possesses 'a written instrument which purports . . . to pass title [of the land in question] to the claimant.'" Id, (quoting Snook v. Bowers, 12 P.3d 771, 780 (Alaska 2000)). "Such claimants had to possess the land for only seven years, rather than the ten-year limitations period that applied to everyone else." Id.

Defendants contend that "the relevant inquiry period under substantive federal law and substantive state adverse possession statutes" is "between March 22, 1985 and October 31,

-11-

1998[.]"[34] Defendants point to October 31, 1998, as the "end date" presumably because on October 31, 1998, the current version of Section 1636 of Title 43 became effective. Subsection (d)(1)(A)(i) of Section 1636 provides, in relevant part, that

> all land and interests in land in Alaska conveyed by the Federal Government pursuant to the Alaska Native Claims Settlement Act . . . to a Native individual or Native Corporation . . . shall be exempt, so long as such land and interests are not developed or leased or sold to third parties from . . . adverse possession and similar claims based upon estoppel[.]

"Developed" for purposes of Section 1636

> means a purposeful modification of land, or an interest in land, from its original state that effectuates a condition of gainful and productive present use without further substantial modification. Any such modification shall be performed by the Native individual or Native Corporation [but a]ny lands previously developed by third-party trespassers shall not be considered to have been developed.[.]

43 U.S.C. § 1636(d)(2)(A)(i).

Thus, it appears that defendants aptly assume that after October 31, 1998, they could not assert adverse possession against plaintiffs because Section 1636(d)(1)(A) precludes adverse possession claims as to ANCSA lands. The court accepts defendants' proposed end date for a possible adverse possession claim because there is no evidence that plaintiffs "developed" the three parcels in question in any fashion after October 31, 1998.

---

[34]Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-Motion to Dismiss at 3, Docket No. 237.

Defendants contend that they can establish adverse possession pursuant to the pre-2003 versions of both AS 09.45.052(a) and AS 09.10.030. The difference as to defendants' two claims of adverse possession is the "start date."

As for their claim pursuant to AS 09.45.052(a), defendants contend that "Clarence Alexander's adverse possession rights under [the pre-2003 version of] AS 09.45.052(a) started on August 7, 1990 and vested on August 8, 1997 prior to October 31, 1998."[35] In order "for an individual to establish color of title[,]" he first "must show the existence of a written instrument which purports, but which may not be effective, to pass title to the claimant." Snook, 12 P.3d at 780 (citation omitted). Defendants appear to be contending that the approval of Clarence's § 14(c) application by GZ Corporation is the "written instrument which purports . . . to pass title" to the lands in question to Clarence. Id. (citation omitted). But, there can be no dispute that the approval of Clarence's § 14(c) application did not convey, or purport to convey, title to any land, much less to any of the land in question. All the August 6, 1990 resolution did was "approve" Clarence's § 14(c) application.[36] Clarence did not receive title to any land in connection with his §14(c) application until 2016. Prior to that date, he did not have any written instrument that created color and claim of title in the disputed lands. Without colorable title, defendants cannot establish adverse possession pursuant to the pre-2003 version of AS 09.45.052(a).

---

[35]Id. at 3-4.

[36]Resolution 90-02, Exhibit D at 1, Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 153.

-13-

As for their claim of adverse possession pursuant to the pre-2003 version of AS 09.10.030, defendants contend the start date for this claim is March 22, 1985.[37] March 22, 1985 is the date on which GZ Corporation received an interim conveyance of the lands at issue in this lawsuit. March 22, 1985 is also after the date on which Clarence filed his § 14(c) application. In suggesting this as a "start date", defendants recognize that they could not claim adverse possession as long as title to the lands in question was in the United States. The court accepts defendants' proposed start date of March 22, 1985 for their adverse possession claim pursuant to the pre-2003 version of AS 09.10.030.

The question then becomes whether during the time period of March 22, 1985 through October 31, 1998, defendants can show, by "clear and convincing evidence" that their "'use of the land [at issue] was continuous, open and notorious, exclusive and hostile to the true owner.'" Nome 2000 v. Fagerstrom, 799 P.2d 304, 309 (Alaska 1990) (quoting Smith v. Krebs, 768 P.2d 124, 125 (Alaska 1989). Defendants' adverse possession claim fails on the hostility prong.

"The hostility element requires adverse possessors to prove both that they acted as owners and that they did not act with the true owner's permission." Yuk, 397 P.3d at 266 (citation omitted). "A claimant's use is adverse or hostile if the true owners merely acquiesce, and do not intend to permit a use." McDonald v. Harris, 978 P.2d 81, 85 (Alaska

---

[37]Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-Motion to Dismiss at 3, Docket No. 237.

-14-

1999) (citation omitted). "The key difference between acquiescence and permission is that a permissive use requires the acknowledgment by the possessor that he holds in subordination to the owner's title." Id. (citation omitted).

Here, any use by defendants of Tract 9, Tract 19A, and the triangle-shaped parcel of land at the end of the Barge Landing Road between March 22, 1985 and October 31, 1998 was permissive, not hostile. In 1984, Clarence submitted an application for a § 14(c) claim. By filing this application for a § 14(c) claim, Clarence acknowledged that he held any land he contended was part of his § 14(c) claim in subordination to plaintiffs' title to the land. Although Clarence's application was approved on August 6, 1990, that approval did not end the application process. The application process did not end until January 29, 2016, the date on which Clarence received the quitclaim deed for Tract 19. As long as the § 14(c) application was in process, a process that included disagreements as to what land should be conveyed to Clarence, Clarence was in substance acknowledging plaintiffs' superior title. Quite simply, Clarence's pursuant of a § 14(c) deed was an acknowledgment that he held the lands in question in subordination to plaintiffs' superior title.

This case is similar to Ahtna v. Williams, Case No. 3:08-cv-0002-JWS, 2009 WL 10674492 (D. Alaska June 4, 2009). There, Dianna Johnson Williams ("Johnson") contended that she had title to a five-acre parcel ("the Lot") for which she and her ex-

-15-

Case 4:18-cv-00016-HRH   Document 239   Filed 06/02/20   Page 15 of 18

husband had submitted a § 14(c) application to Ahtna, an application Ahtna denied.[38] Id. at *1. Johnson contended that she had title to the Lot via adverse possession. Id. at *2. Johnson's § 14(c) application had been filed on July 26, 1983; Ahtna was granted title to the Lot on October 23, 1981; Ahtna first demanded that Johnson remove her belongings from the Lot on August 19, 1993; and "Johnson's counsel repudiated Ahtna's claim of title on September 17, 1993." Id. at *3-4. From these facts, the court found that

> [f]rom 1981 to 1993, Ahtna permitted Johnson to remain on the land. This is supported by the fact that Ahtna appears to have known of the occupancy by virtue of Johnson's § 14(c)(1) application, but did not demand that Johnson vacate the Lot until August 1993. It is also supported by the fact that Johnson affirmatively recognized Ahtna's superior title to the Lot when she applied to Ahtna in 1983 for a reconveyance of the Lot pursuant to § 14(c)(1).

Id. at *4.

Here too Clarence affirmatively recognized plaintiffs' superior title to the lands in question when he made his § 14(c) application in 1984 and this affirmative recognition continued as he pursued that application to its eventual conclusion in 2016, with the granting of the quitclaim deed. On the facts of this case, there can be no dispute that defendants' possession of the lands in question was not hostile between March 22, 1985 and October 31,

---

[38]The court is mindful that in this case, GZ Corporation did not deny Clarence's § 14(c) application but rather approved his application. But, as discussed above, this approval did not give Clarence color and claim of title to the land in question.

-16-

1998, but rather was permissive. Thus, for lack of hostility, defendants' adverse possession claim based on the pre-2003 version of 09.10.030 fails as a matter of law.

Because defendants cannot establish adverse possession under the pre-2003 versions of either AS 09.45.052(a) or AS 09.10.030, their adverse possession affirmative defense fails as a matter of law.[39] Thus, their cross-motion for summary judgment is denied.

But, even though defendants' adverse possession affirmative defense fails as a matter of law, plaintiffs are not entitled to summary judgment on their ejectment claim. There is no doubt that GZ Corporation received legal title to the three parcels in question in 1985 via the interim conveyance from the federal government. It is also undisputed that in 1994, GZ Corporation transferred some of its land to the Tribal Government. Although plaintiffs allege that the land in question was transferred to the Tribal Government as part of the 1994 transfer,[40] there is no evidence to support this allegation. Clearly one of GZ Corporation or the Tribal Government has title to the three disputed parcels; and whichever one of them is the owner is entitled to eject defendants from those parcels. With GZ Corporation having conveyed 4.5 townships of land to the Tribal Government, it would be easy to infer that the Tribal Government is the owner of the disputed parcels. But, without evidence, it remains unclear as to which of plaintiffs currently has legal title to Tract 9, Tract 19A, and the

---

[39]Because defendants' adverse possession defense fails, their Rule 56(d) request is moot.

[40]First Amended Complaint at 5, ¶ 12, Docket No. 95.

-17-

triangle-shaped parcel of land at the end of the Barge Landing Road.[41] Before this case can be concluded, one or the other of the parties or the court must decide which of GZ Corporation or the Tribal Government is entitled to eject defendants from Tract 9, Tract 19A, and the triangle-shaped parcel of land at the end of Barge Landing Road.

Conclusion

Plaintiffs' motion for summary judgment[42] is denied. Defendants' motion to dismiss,[43] which has been treated a cross-motion for summary judgment, is also denied.

DATED at Anchorage, Alaska, this 2nd day of June, 2020.

/s/ H. Russel Holland
United States District Judge

---

[41]GZ Corporation apparently retained ownership of Tract 19, the land that was conveyed to Clarence as his § 14(c) claim, since GZ Corporation was the entity that quitclaimed that tract to Clarence. This is consistent with plaintiffs' allegation that exempt from the 1994 transfer to the Tribal Government was any land that GZ Corporation was obligated to transfer as a § 14(c) claim.

[42]Docket No. 216.

[43]Docket No. 228.

-18-