**JAMES M. HACKETT**
**401 Eleventh Avenue**
**Fairbanks, Alaska 99701**
**(907) 456-3626**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GWICHYAA ZHEE GWICH'IN TRIBAL GOVERNMENT and GWITCHYAA ZHEE CORPORATION,  <br><br>   Plaintiffs,  <br><br>   v.  <br><br> CLARENCE ALEXANDER and DEMETRIE (DACHO) ALEXANDER,  <br>   Defendants. | **DEFENDANTS' OPPOSITION TO DOCKET 255 AND TO PLAINTIFFS' DOCKET 259 MOTION** |

4:18-cv-00016- HRH

Defendants oppose Docket 255's directive to "establish[] which…plaintiff[]…holds legal title to disputed parcels"[1] procedurally[2] and/or substantively[3]. Defendants also oppose Docket 259 procedurally and substantively[4].

---

[1] Docket 255, filed 08/24/20, Pages 1-2 of 3.

[2] Under the Supremacy Clause it is procedurally premature and futile to enter such a state law decision absent prior rulings: (1) GZ Corp. has complied with "[r]equirements of Section 14(c)" [in ANCSA] as required by the Interim Conveyance and Patent; (2) Plaintiffs have complied with 43 USC §1624 ("§1624") and "necessary" regulation 43 CFR 2650.5-4(c)(1) under the Supremacy Clause; (3) §1624 and 43 CFR §2650.5-4(c)(1) must be construed in *pari materia* with 43 USC §1632(b)("§1632"), not nullified by §1632(b); and (4) GZ Corp.'s compliance with §1624 and 43 CFR §2650.5-4(c)(1) is required under federal preemption and the Interim Conveyance and Patent, before the Court can AS 09.45.630 state law ejectment elements under the Supremacy Clause.

[3] Neither Plaintiff holds a present AS 09.45.630 "legal estate" in disputed areas because title to disputed parcels previously vested in Clarence as a matter of state adverse possession law.

1

**Docket 255 Poses The Wrong Question**: **Plaintiffs Agree**. Docket 255's directive appears vague and immaterial. The law recognizes different types of "title". As examples, "[l]egal title" means "[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest"[5]. "[R]ecord title" means "[a] title as it appears in the public records after the deed is properly recorded"[6]. "Adverse title" means "[a] title acquired by adverse possession"[7]. "[I]mperfect title" means "[a] title that requires a further exercise of granting power to pass land in fee, or that does not convey full and absolute dominion"[8].

Alexanders' Answer denies 2013-2014 changes to Tract 19 were "[c]onsistent with…Clarence['s]…1984 §14(c) application", alleging "to the contrary…Clarence['s] 1984 §14(c)(1) application was intended to include [the] Joe Ward barge area and the Tract 19A area (plus additional areas)"[9]. Alexanders' Answer states "to the best of [Alexanders'] present knowledge and belief, GZ Corp.'s 2008 FYMOB contained no Tract 19A, no repositioned Tract 9 encroaching onto Tract 19, and no reconfigured Joe Ward barge area"[10]. Alexanders' Answer denies GZ Corp.'s 2016 quitclaim deed

---

[4] Docket 259, filed 09/24/20, Pages 1-8.
[5] BLACK'S LAW DICTIONARY at 1789 (11th ed.2019).
[6] *Id.*
[7] BLACK'S LAW DICTIONARY at 1788 (11th ed. 2019); Docket 259-2 does not address Alexanders' adverse title claim under Exception no. 14: "Occupant(s) or any parties whose rights, interests or claims are not shown by the public records but which could be ascertained by an inspection of the land described above by making inquiry of persons in possession thereof, including but not limited to, any lien or right to a lien for services, labor or material theretofore or hereafter furnished". .
[8] *Id.*
[9] Docket 101, filed 02/08/19, ¶24, Page 12 of 41.
[10] *Id.*, Pages 12-13 of 41.

> …satisfied GZ Corp.'s fee simple subject to executory limitation or interests obligations under federal patent made subject to GZ Corp.'s compliance with §14(c) requirements, Including GZ Corp.'s compliance with authorized federal regulations implementing §14(c) requirements, as applied in…Clarence['s]…§14(c)(1) case[11].

Defendants' Answer also raised a quiet title compulsory counterclaim under AS 09.45.010[12]. Docket 211 dismissed Defendants' AS 09.45.010 quiet title counterclaim, stating "[b]y their counterclaims, the Alexanders are requesting that the court review plaintiffs' decisions as to Clarence's §14(c) claim"[13]; and "[t]he Alexanders are time-barred from seeking judicial review of Clarence's §14(c) claim"[14].

Citing *Gillespie* v. *Windust*, 143 F. Supp. 555, 560 (D. Alaska 1956), Docket 259 concedes "[i]t is important…to note that an ejectment action is not a quiet title action and is not used to determine title"[15]. *Gillespie* holds in relevant part:

> Continuous prior possession is a sufficient estate in this jurisdiction to warrant an ejectment action against an intruder…Possession sufficient to establish a basis for this action must be open, notorious, and continuous, subjecting the property to the dominion of the plaintiff in a practical and substantial use[16].

For decades Alexanders have had exclusive possession over disputed areas[17]. Not a scintilla of evidence shows: (1) Clarence was "an intruder"; or (2) Plaintiffs had prior

---

[11] Docket 101, filed 02/08/19, Page 13 of 41.
[12] Docket 101, filed 02/08/19, Pages 39-40 of 41.
[13] Docket 211, filed 12/19/19, Page 23 of 38.
[14] *Id*., Page 38 of 38.
[15] Docket 259, filed 09/24/20, Page 6 of 8 n. 12 (citing *Gillespie*).
[16] *Gillespie*, 143 F. Supp. at 560.
[17] *See* 9/30/20 Affidavit of Virginia Alexander.

possession over disputed areas, let alone *Gillespie*'s "open, notorious, and continuous" possession. Plaintiffs have raised no quiet title claim. Whether or not either Plaintiff has "legal title" appears immaterial.

**Pertinent Questions Before The Court Are Ultimate Questions Of Law Which None of Plaintiffs' Proferred Materials Answers Or Can Answer Under Rule 56(c)(2)**[18]. Undisputed self-authenticating federal conveyances show the United States conveyed "surface estate" to certain lands to GZ Corp. in the 1985 Interim Conveyance[19] and the 2007 Patent[20]. The 1985 Interim Conveyance states its "GRANT OF THE ABOVE-DESCRIBED LANDS IS SUBJECT TO…4. Requirements of Sec. 14(c) of [ANCSA]"[21]. The 2007 Patent states its "GRANT OF THE ABOVE-DESCRIBED LANDS IS SUBJECT TO…3. Requirements of Sec. 14(c) of [ANCSA]"[22]. Neither the 1985 Interim Conveyance nor the 2007 Patent defines the nature and scope of §14(c) "[r]equirements". That matter is a purely legal question.

From Alexanders' perspective, three (3) pertinent questions exist, which must be addressed and answered in the following order to comply with §14(c) and Supremacy Clause preemption requirements: (1) did GZ Corp., a federal §14(c) instrumentality, comply with §14(c) "requirements" in Clarence's case, and what were (are) those §14(c) "requirements"?; (2) assuming GZ Corp. can prove compliance with federal preemption

---

[18] Rule 56(c)(2) **Objection That a Fact Is Not Supported By Admissible Evidence** states: "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence".
[19] Docket 245-1, filed 06/22/20, Page 1 of 9.
[20] Docket 245-2, filed 06/22/20, Page 1 of 10.
[21] Docket 245-1, Pages 8-9 of 9.
[22] Docket 245-2, filed 06/22/20, Pages 9-10 of 10.

§14(c) "requirements" in Clarence's case, then what type of cognizable "legal estate", if any, does GZ Corp. have in disputed areas under §14(c) and/or AS 09.45.630?; and (3) assuming GZ Corp. can prove compliance with federal preemption requirements, and assuming GZ Corp. can identify a specific type of cognizable §14(c) claim, and/or "legal estate" it presently has to disputed §14(c) areas, can GZ Corp. prove its "right to present possession" to disputed §14(c) areas under §14(c) and/or AS 09.45.630?

Each of these three (3) questions poses an ultimate question of law. No materials Docket 259 presents in response to Docket 255 constitutes competent, admissible evidence under Rule 56(c)(2) to answer these legal questions. A witness cannot be allowed to give an opinion on a question of law[23]. An expert opinion on the "ultimate issue" may not go so far as to permit an expert to offer a legal conclusion[24]. While "it is well established…that expert testimony concerning the ultimate issue is not per se improper", "an expert witness cannot give an opinion as to [his/her] legal conclusion, i.e., an opinion on an ultimate issue of law"[25]. The nature and scope of §14(c) "[r]equirements"--mandated by the 1985 Interim Conveyance and 2007 Patent-- presents an ultimate issue of law. This ultimate legal issue is not answerable by incompetent third-party opinions.

---

[23] *Specht v. Jensen*, 853 F.3d 805, 807 (10th Cir. 1988)(interpreting Evidence Rule 702 and quoting Stoebuck, *Opinions on Ultimate Facts: Status, Trends, and a Note of Caution,* 41 Den. L. Cent. J. 226, 237 (1964)).
[24] *Carter v. County of Santa Clara*, 2008 WL 2055597 at *1 (N.D. Cal. 2008).
[25] *Muhktar v. California State University, Hayward*, 229 F.3d 1053, 1065 n. 10 (9th Cir. 2002).

## The 1985 Interim Conveyance and 2007 Patent Remain As The Only Authenticated Admissible Evidence Regarding GZ Corp.'s "Surface Title" To Disputed §14(c) Areas

Consequently Plaintiffs' response to Docket 255 fails. Docket 260 (attorney Lee Baxter's declaration) references Plat 2014-78 and attaches Docket 259-1 (Sheet 2 of 30 in Plat 2014-78): Docket 260 is generally inadmissible[26]. Docket 259 argues Plat 2014-78 and Docket 259-1 are admissible under Evidence Rule 803(14)[27]. Plat 2014-78 and Docket 259-1 violate Alaska's conveyance acknowledgement rule. Plat 2014-78 and Docket 259-1 are not self-authenticating. These documents constitute unauthenticated, untrustworthy documents falling outside the scope of Evidence Rule 803(14), both containing false inadmissible hearsay statements or misleading depictions and/or false inadmissible conclusions of law. The **Stewart** LIMITED LIABILITY REPORT (Docket 259-2) is not a self-authenticating document and is otherwise irrelevant and inadmissible. Docket 261 (Nancy James' Affidavit) is inadmissible. Docket 262 (Michelle Peter's Affidavit) is also inadmissible.

**Plaintiffs Lack Superior §14(c) "Title" As A Matter Of Law Under Supremacy Clause Preemption.** Recognizing "an ejectment action is not a quiet title action and is not used to determine title"[28], Plaintiffs argue "[t]he proper inquiry…is 'who has the *superior right* to possession in the premises as between the parties"[29].

---

[26] Defendants have filed separate Objections to Plaintiffs' separate evidentiary offerings in response to Docket 255's request for "admissible evidence".
[27] Docket 259, filed 09/24/20, Page 6 of 8.
[28] *Id.*
[29] *Id.* (bold and italics in Docket 259).

Hornbook law teaches federal law preempts conflicting state law under the Supremacy Clause[30], anything to the contrary in state statutory or constitutional law notwithstanding. Docket 259's framing of the issue under state ejectment law is contrary to federal preemption. AS 09.45.630 state law ejectment elements constitute the "the proper inquiry" only if Plaintiffs have first proven compliance with federal preemption requirements under the plain terms of the 1985 Interim Conveyance and the 2007 Patent. Plaintiffs have not shown, and cannot show, compliance with federal preemption §14(c) "requirements" in Clarence's case.

### GZ Corp.'s Claim To Disputed §14(c) Areas Is *Ultra Vires* Conduct By A §14(c) Federal Instrumentality[31] Not Authorized By §§14(c)(1)-(4), 43 CFR §2654.5-4(c)(1), Or Federal Preemption

GZ Corp. is an ANCSA village corporation under §14(c). As a village corporation GZ Corp. cannot qualify as a lawful claimant under §§14(c)(1)-(4). As a §14(c) federal instrumentality, GZ Corp. cannot deed itself §14(c) lands, disputed or otherwise. Congress never intended under ANCSA to convey lands to native corporations to the exclusion of those who previously utilized the lands in an established, legal and routine

---

[30] Article VI, Clause 2 of the United States Constitution states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding".

[31] *Ogle v. Salamatof Native Ass'n*, 906 F. Supp. 1321, 1330 (D. Alaska 1995)("*Ogle*")("When Congress and the Secretary delegated to [ANCSA village corporations] initial responsibility to resolve section 14(c) claims, [*ANCSA village corporations*] *became an instrument of the federal government*, obligated under the Fifth Amendment to give adequate notice before depriving anyone of his or her property rights")(italics added).

7

fashion: otherwise no reason exists for §14(c) reconveyance provisions[32]. Simply put, GZ Corp. does not qualify for any kind of §14(c) land. As a §14(c) federal instrumentality, GZ Corp. must comply with controlling ANCSA regulations. The Secretary of the Interior enacted regulations "[t]o facilitate the transfer of section 14(c) properties to lawful claimants"[33]. "Federal regulations have no less pre-emptive effect than federal statutes"[34]. GZ Corp.'s claim to disputed §14(c) areas constitutes *ultra vires* conduct violating §14(c), 43 CFR §2654.5-4(c)(1)("5-4(c)(1)"), the Fifth Amendment, and Supremacy Clause federal preemption. GZ Corp. cannot directly deed two of the three[35] disputed §14(c) areas to itself. Here GZ Corp. is trying to obtain that *ultra vires* result indirectly. The Court should prohibit GZ Corp.'s *ultra vires* self-dealing. If GZ Corp. were a federal agency instead of a federal §14(c) instrumentality, the Court would have to "hold unlawful and set aside" *ultra vires* actions[36]. The Court should not enable GZ Corp. to acquire disputed §14(c) land GZ Corp. was, and is, ineligible to apply for in the first

---

[32] *Hakala v. Atxam Corp.,* 753 P.2d 1144, 1147 (Alaska 1988)(stating "[w]e do not…believe that Congress intended under ANCSA to convey lands to native corporations to the exclusion of those who had previously utilized the lands in an established, legal and routine fashion…Otherwise we can find no reason for Congress to have included the reconveyance clause in §14(c)(1). Thus, we believe that in §14(c)(1), Congress intended to protect the existing rights of those using lands which would later become subject to an interim conveyance under ANCSA").
[33] *Ogle*, 906 F. Supp. at 1328.
[34] *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 US 141, 153 (1982).
[35] The third disputed area is part of Tract 9, the 2013-2014 reconfigured, subordinate §14(c)(3) municipal tract which now unlawfully encroaches on Tract 19, Clarence's priority §14(c)(1) tract.
[36] 5 USC §706 **Scope of Review**, states "[t]he reviewing court shall—", under (2) "hold unlawful and set aside agency action…found not to be…(A)…not in accordance with the law; (B) contrary to constitutional right…; (C) in excess of statutory…authority…; (D) without observance of procedure required by law").

8

place. As a federal §14(c) instrumentality GZ Corp. must comply with both mandatory sentences in regulation 5-4(c)(1)[37], a preemptive federal regulation enacted "[t]o facilitate the transfer of section 14(c) properties to lawful claimants"[38]. Clarence was and is a lawful §14(c) claimant. GZ Corp. has failed to comply with the first and second mandatory sentences in regulation 5-4(c)(1) since 1984 to present in Clarence's case.

**Previous Dockets Nullify 43 USC §1624 and 43 CFR §2650.5-4(c)(1) In Violation Of Federal Preemption**. Dockets 211, 239, 254, and 257 ("previous dockets") ignore and nullify 43 USC §1624 ("§1624"). Entitled "**Regulations; issuance; publication in Federal Register,** §1624 states in part: "[t]he Secretary is authorized to issue and publish…such regulations as may be necessary to carry out the purposes of this chapter"[39]. Previous dockets also ignore and nullify regulation 5-4(c)(1), a "necessary" regulation enacted under §1624. "[P]roperly enacted regulations have the force of law and are binding on the government until properly repealed"[40]. Properly enacted ANCSA regulations are also binding on GZ Corp., a federal §14(c) instrumentality. Regulation 5-4(c)(1) has never been repealed. Previous dockets misapply 43 USC §1632(b)("§1632(b)") to Alexanders' 5-4(c)(1) affirmative defenses ("<u>AD</u>s"). By nullifying §1624 and regulation 5-4(c)(1), previous dockets ignore and violate federal preemption. §1632(b) includes statutory words "after the date of filing of the map of

---

[37] The first sentence in (c)(1) states in part "[t]he boundaries of…tracts shall be posted on the ground". The second sentence in (c)(1) states "[c]onflicts arising among potential transferees identified in section 14(c) of the Act, or between the village corporation and such transferees will be resolved prior to submission of the map".
[38] *Ogle*, 906 F. Supp. at 1328.
[39] 43 USC §1624.
[40] *Flores v. Bowen,* 790 F.2d 740, 742 (9th Cir. 1986).

9

boundaries as provided for in regulations promulgated by the Secretary"[41]. "Statutes in pari materia or relating to the same subject matter are to be interpreted in light of, and consistently with, one another[42]. That §1624 and §1632(b) both deal with ANCSA regulations is plain: each statute expressly references "regulations". §1624 and §1632(b) must be interpreted consistently with each other. Previous dockets commit legal error, interpreting §1632(b) to nullify §1624 and regulation 5-4(c)(1) in violation of federal preemption. Mandatory regulation 5-4(c)(1) constitutes a protected Fifth Amendment property interest under the Supremacy Clause[43]. Previous dockets mistakenly abandon federal question jurisdiction over §1624 and regulation 5-4(c)(1) in violation of federal preemption, even though Docket 22 specifically identified regulation 5-4[44]. Federal question jurisdiction exists unless "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or where such a claim is wholly insubstantial"[45]. Federal question jurisdiction clearly exists over Alexanders' ADs identifying Plaintiffs' failure to comply mandatory regulation 5-4(c)(1) requirements. Evidence is undisputed Plaintiffs have not complied with mandatory regulation 5-4(c)(1) requirements in Clarence's case.

*Ahtna* **Is Inapposite.** *Ahtna, Inc. v. Williams*, 2009 WL 10674492 (D. Alaska, 06/04/2009)("*Ahtna*") involved unlawful §14(c) claimants, not a lawful §14(c)(1)

---

[41] 43 USC §1632(b).
[42] *United States v. Stewart*, 311 US 60, 64 (1940)("[A]ll acts in pari materia are to be taken together, as if they were one law").
[43] Docket 163, filed 07/15/19, Pages 22-23 of 34 , n. 133-134 (citing pertinent 9th Circuit regulation and "property" cases).
[44] Docket 22, filed 07/03/18, Pages 10-11 of 11.
[45] *Bell v. Hood*, 327 US 678, 682 (1946).

claimant like Clarence. *Ahtna* involved failed Eagle River homesteaders who fell outside §14(c)'s parameters. As trespassers, those failed homesteaders fell under *Donnelly v. United States*, 841 F.2d 968, 975 (9th Cir. 1988)(holding "congressional intent to provide a 'just and fair settlement' of native land claims is inconsistent with an interpretation of Sec. 14(c)(1) that would reduce the land patented to native corporations in favor of trespassers")[46]. As such *Ahtna*'s failed homesteaders were "trespassers [precluded] from claiming a right to ANCSA lands"[47]. *Ahtna*'s failed homesteaders also fell under ANILCA's 1998 amendment intended "to prevent any adverse possession claims by third-party trespassers who had developed ANCSA lands"[48]. Thus the ANCSA regional corporation involved in *Ahtna* was not "subject to adverse possession claims of title asserted by third-party trespasser/developers under §1636(d)(1)(A)(1)[49]. Docket 239 quotes *Ahtna* statements related to federal trespassers, incorrectly attributing those inapposite *Ahtna* trespassory statements to Clarence, a valid §14(c)(1) claimant[50].

**As a Federal §14(c) Instrumentality Bound By Federal Law, GZ Corp. Can Not Have Superior Title Over Disputed §14(c) Areas Claimed By Clarence Alexander, A Valid §14(c)(1) Claimant, As A Matter Of Law And Federal Preemption**

Docket 259 argues the only unresolved state law ejectment issue is "who has a superior right to possession of the [disputed parcels] as between Plaintiffs and the

---

[46] *See also Donnelly v. United States*, 850 F.2d 1313, 1320 (9th Cir. 1988).
[47] *Ahtna*, at *1.
[48] *Id*. at *2.
[49] *Id*. at *4.
[50] Docket 239, filed 06/02/20, Pages 16-17 of 18.

11

Alexanders"[51]. This argument ignores Plaintiffs' failures to comply with preemptive federal law—including regulation 5-4(c)(1)—in violation of the Supremacy Clause. Alexanders removed Plaintiffs' state ejectment action based on federal question jurisdiction, citing 43 USC. §1613(c)(1)("14(c)(1)"), regulation 5-4, and the Fifth Amendment[52]. §14(c)(1) constitutes a "property" interest protected under the Fifth Amendment Due Process Clause[53]. Regulation 5-4(c)(1)'s mandatory terms make this ANCSA regulation a separate "property" interest protected under the Fifth Amendment[54].

Unless Plaintiffs can first show compliance with federal constitutional, statutory and regulatory requirements, the Court lacks authority to decide subordinate state law AS 09.45.630 ejectment issues. A district court's interpretation of underlying legal principles is subject to de novo review and a district court abuses its discretion when it makes an error of law[55]. Not expressly identifying federal preemption, Docket 22 nonetheless applies federal preemption correctly when denying Plaintiffs' motion for remand. Docket 22 explains with clarity the priority effect federal preemption requirements have on Plaintiffs' state ejectment action:

---

[51] Docket 259, Page 7 of 8.
[52] Docket 1, filed 04/17/18, Pages 2-3 of 4.
[53] *Ogle*, 906 F. Supp. at 1330 ("Congress is generally under no obligation to *create a property right* in any private individual or group. Where, however, Congress creates rights, *as it did in the case of 14(c) claimants*, the government must make reasonable efforts to alert the possessor of such rights to the risk of loss")(italics added).
[54] *Foss v. National Marine Fisheries Service*, 161 F.3d 584, 588 (9th Cir. 1998); *Wedges/ Ledges of California, Inc. v. City of Phoenix, Ariz.,* 24 F.3d 56, 63 (9th Cir. 1994); *Griffeth v. Detrich,* 603 F.2d 118, 120-121 (9th Cir. 1979).
[55] *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003)(en banc)(per curiam).

> …the primary issue is whether the boundaries of Tract 19A are correct…resolution of that issue will depend on plaintiffs' compliance with the requirements for §14(c)(1) claims, which is a substantial question of federal law. Whether plaintiffs complied with the notice requirements associated with §14(c)(1) claims or the survey regulations are issues involved in the determination of the correct boundaries of Tract 19A. These are not defenses that defendants might raise. These are issues that plaintiffs will have to prove in order to establish a necessary element of their ejectment claim[56].

Compounding its error, Docket 259 argues "[t]he issue this suit asks the Court to resolve, *and the issue this Court has already resolved with its prior rulings,* is who has a superior right to possession of [disputed areas] as between Plaintiffs and the Alexanders"[57]. Docket 259 is mistaken: Docket 22 is a "prior ruling[]". Docket 22 correctly identified fulfillment of federal preemption requirements as part of Plaintiffs' necessary ejectment proof. Docket 259's reference to "superior right to possession" means state statutory "right to present possession" under AS 09.45.630. Here Plaintiffs have not complied with priority federal preemption requirements. Under these circumstances the Supremacy Clause and Docket 22 prohibit the Court from addressing secondary state AS 09.45.630 ejectment issues. As Docket 22 correctly ruled, "[t]hese [federal preemption requirements] are not defenses that defendants might raise. These [federal preemption requirements] are issues that plaintiffs will have to prove in order to establish a necessary element of their ejectment claim"[58].

---

[56] Docket 22, filed 07/03/18, Pages 10-11 of 11.
[57] Docket 259, filed 09/24/20, Page 7 of 8 (italics added).
[58] Docket 22, filed 07/03/18, Pages 10-11 of 11.

13

**Conclusion**. This case remains at the summary judgment stage. Docket 255 is still "looking for admissible evidence"[59] before entry of judgment[60]. "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment"[61]. "A district court may modify, or even rescind, such interlocutory orders"[62]. LR 1.1(a)(2) "promote[s] the just, efficient, and economical determination of every…proceeding"[63]. Plaintiffs' failure to present sufficient Docket 255-directed "admissible evidence" constitutes a just reason under LR 1.1(a)(2) to reconsider prior interlocutory orders, in an efficient manner, in light of additional briefing. The Court should deny Docket 259 and dismiss Plaintiffs' ejectment complaint.

Dated at Fairbanks, Alaska this 8th day of October, 2020.

   ___*James M. Hackett*_____
James M. Hackett /ABN 7106014
Attorney For Defendants

---

[59] Docket 255, filed 08/24/20, Page 2 of 3.
[60] *Id.,* Page 3 of 3 ("the court will take up the matter of the form of judgment [in the future]").
[61] *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)(citing *Marconi Wireless Telegraph Co. v. United States*, 320 US 1, 47-48 (1943)); *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)(holding a district court has inherent power to reconsider interlocutory orders "when it is consonant with justice to do so").
[62] *Mallory*, 922 F.2d at 1282 (citing *Simmons Co. v. Grier Brothers Co.*, 258 US 82, 88 (1922)).
[63] LR 1.1(a)(2) states in part: "[t]hese Local Civil Rules supplement the Federal Rules of Civil Procedure and must be construed…to promote the just, efficient, and economical determination of every action and proceeding".