IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GWITCHYAA ZHEE CORPORATION and GWICHYAA ZHEE GWICH'IN TRIBAL GOVERNMENT,<br><br>                               Plaintiffs,<br><br>  vs.<br><br>CLARENCE ALEXANDER and DEMETRIE (DACHO) ALEXANDER,<br><br>                      Defendants and Third-<br>                      Party Plaintiffs,<br><br>  vs.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior,<br><br>                      Third-Party Defendant. | No. 4:18-cv-0016-HRH |

O R D E R

Motion for Costs and Attorneys' Fees

Plaintiffs Gwitchyaa Zhee Corporation and Gwichyaa Zhee Gwich'in Tribal Government move for an award of taxable costs[1] and attorneys' fees.[2] This motion is

---

    [1]Pursuant to Local Rule 54.1, bills of costs are to be filed separately from a motion for attorneys' fees and are reviewed and taxed by the Clerk of Court. The court, however, will consider plaintiffs' bill of costs even though they did not comply with the local rule.

    [2]Docket No. 300.

opposed by defendants Clarence and Demetrie ("Dacho") Alexander.[3] Oral argument was not requested and is not deemed necessary.

Background

This case began when plaintiffs filed a complaint in state court on February 26, 2018. In their complaint, plaintiffs asserted a single ejectment claim. Plaintiffs sought to eject defendants from land that defendants contended was part of Clarence's ANCSA § 14(c) claim. On April 17, 2018, defendants removed this case to federal court and on July 3, 2018, the court denied plaintiffs' motion to remand.[4] The court held that removal had been proper "because plaintiffs' well-pleaded complaint establishes that plaintiffs' right to relief on their state-law ejectment claim depends on the resolution of substantial questions of federal law."[5] On July 13, 2018, defendants filed their answer, counterclaims, and third-party complaint.[6] In their first counterclaim, defendants sought a declaration that GZ Corporation's § 14(c) processes and procedures were, among other things, unconstitutional because they violated defendants' due process rights.[7] In their other counterclaims, defendants challenged plaintiffs' reliance on the statute of limitations in 43 U.S.C. § 1632, sought a de novo hearing on Clarence's § 14(c) claim, and moved to quiet title in the land at issue.[8]

---

[3]Docket Nos. 304 and 306.

[4]Docket No. 22.

[5]Id. at 11.

[6]Docket No. 24.

[7]Id. at 24, ¶ 40.

[8]Id. at 24, ¶ 41 - 28, ¶ 61.

Over the remainder of 2018 and 2019, the parties engaged in motion practice; discovery was conducted; and defendants pursued their third party complaint against the Secretary of Interior, a complaint that was eventually dismissed.[9] On December 19, 2019, the court granted plaintiffs' motion for summary judgment and denied defendants' cross-motion for summary judgment, holding that defendants were "time-barred from seeking judicial review of Clarence's § 14(c) claim."[10] On January 9, 2020, plaintiffs filed a motion for summary judgment on their ejectment claim.[11] The parties spent most of the remainder of 2020 litigating the merits of plaintiffs' ejectment claim, and on December 22, 2020, the court entered judgment in plaintiffs' favor.[12] The instant motion for costs and attorneys' fees followed.

## Attorneys' Fees

Plaintiffs move for an award of attorneys' fees pursuant to Rule 82, Alaska Rules of Civil Procedure. "'Alaska is the only state that does not follow the American rule [pertaining to attorney's fees].'" Monzingo v. Alaska Air Group, Inc., 112 P.3d 655, 665 (Alaska 2005) (quoting Edwards v. Alaska Pulp Corp., 920 P.2d 751, 755 (Alaska 1996)). "'Under the American rule, each party pays its attorney's fees, regardless of who prevails.'" Id. (quoting Edwards, 920 P.2d at 755). "'The purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning his case. It is not intended as a vehicle for

---

[9]Docket No. 210.

[10]Order re Cross-motions for Summary Judgment at 38, Docket No. 211.

[11]Docket No. 216.

[12]Docket No. 284.

accomplishing anything other than providing compensation where it is justified.'" Id. (quoting Tobeluk v. Lind, 589 P.2d 873, 876 (Alaska 1979)).

Rule 82 can "provide grounds for a fee award in the District of Alaska; specifically, in diversity cases and in federal question cases with supplemental jurisdiction over state-law claims[.]" Disability Law Center of Alaska, Inc. v. Anchorage School Dist., 581 F.3d 936, 941 (9th Cir. 2009) (internal citations omitted). But, defendants argue that AS 09.60.010(c) limits the application of Rule 82 in this case.

AS 09.60.010(c)(2) provides that

> [i]n a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court . . . may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

This statute

> was enacted to abrogate [Alaska's] previous common law public interest litigation attorney's fees framework and replace it with a narrower constitutional litigation framework. The statute both encourages and protects those challenging governmental action as a violation of federal or state constitutional rights. First, the statute provides that a successful claimant generally is entitled to an award of full reasonable attorney's fees and costs incurred in connection with a constitutional claim, unless the claimant had "sufficient economic incentive" to bring the claim regardless of its constitutional nature. Second, the statute protects an unsuccessful claimant from an adverse attorney's fees award if the constitutional claim was not frivolous and the claimant did not have "sufficient economic incentive" to bring the claim regardless of its constitutional nature.

-4-

Alaska Conservation Foundation v. Pebble Ltd. Partnership, 350 P.3d 273, 274 (Alaska 2015) (quoting AS 09.06.010(c)). In other words, "Alaska Statute 09.60.010(c) . . . prohibits a court from ordering a losing [party] to pay the attorney fees of an opponent devoted to claims concerning constitutional rights." Lake & Peninsula Borough Assembly v. Oberlatz, 329 P.3d 214, 226 (Alaska 2014). This means that in cases involving both constitutional and non-constitutional claims, "Rule 82 attorney fees may be awarded only for work that would not have been necessary but for a non-constitutional claim; AS 09.60.010(c)(2) applies to work in which a constitutional claim is implicated in any way." Id. at 228.

Defendants argue that AS 09.60.010(c) applies here because this case involved constitutional claims in the form of their counterclaims. Plaintiffs, on the other hand, argue that AS 09.60.010(c) has no application here because it only applies to an assertion of constitutional claims against the government or government actors. Plaintiffs argue that AS 09.60.010(c) does not apply in cases such as this in which constitutional claims were asserted against private parties.

The Alaska Supreme Court has never considered the issue of whether AS 09.60.010(c) can apply in cases in which constitutional claims are asserted against private parties. But assuming without deciding that if faced with this issue, the Alaska Supreme Court would hold that AS 09.60.010(c) could apply to constitutional claims asserted against private litigants, defendants would still not be entitled to the protection of the statute.

In order for defendants to be entitled to the protection offered by AS.09.60.010(c), defendants must first show that their constitutional counterclaims were "not frivolous[.]" Alaska Conservation Foundation, 350 P.3d at 274. The Alaska Supreme Court has held that "[i]n most cases, . . . a claim should not be considered frivolous unless the litigant has abused the judicial process or exhibited an improper or abusive purpose." Manning v. State Dep't

of Fish and Game, 420 P.3d 1270, 1283–84 (Alaska 2018) (citation omitted). Under such a definition, defendants' constitutional counterclaims could not be considered frivolous.

Second, in order to fall under the protection of AS 09.60.010(c), defendants must show that they "did not have 'sufficient economic incentive' to bring" their counterclaims "regardless of [their] constitutional nature." Alaska Conservation Foundation, 350 P.3d at 274. "A litigant has sufficient economic incentive to bring a claim when it is brought primarily to advance the litigant's direct economic interest, regardless of the nature of the claim." Id. at 281-82.

Defendants argue that they did not have sufficient economic interest to bring their counterclaims because the land from which plaintiffs sought to eject them was of "insignificant market value."[13] Defendants contend that by late 2011, they had "accepted the status quo" that "the Joe Ward barge area was not part of Clarence's § 14(c)(1) reconveyance" and that they had no incentive to pursue a legal remedy given the area's insignificant market value.[14]

Defendants' argument ignores the fact that Dacho has been using a portion of the land at issue for his "log milling and storage business[.]"[15] Plainly, some of the land at issue had value to one of the Alexanders. In addition, two of the parcels at issue are unique pieces of property because of their access to the Yukon River, and these two parcels have road access as well as river access. The road and river access give this land economic value and further

---

[13]Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees at 12, Docket No. 306.

[14]Id. at 13-14.

[15]Affidavit of Defendant Dacho Alexander [etc.] at 5, ¶ 28, appended to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment [etc.], Docket No. 228.

illustrates that defendants had private, economic incentives to pursue the right to retain all three parcels. Defendants were not acting as a "stalking horse" pursuing this litigation for some broader public interest matter. Alaska Conservation Foundation, 350 P.3d at 276 (quotation marks omitted). Rather, they were pursuing their own economic interests. Thus, even assuming that AS 09.60.010(c) applied here, defendants would not be entitled to its protection.[16]

Because AS 09.60.010(c) does not apply in this case, the issue of attorneys' fees is governed by Rule 82. Under Rule 82, "[i]n cases[,]" such as this, "in which the prevailing party recovers no money judgment, the court . . . shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." Alaska R. Civ. P. 82(b)(2). Prevailing parties in federal question cases with supplemental jurisdiction over state-law claims are only entitled to attorneys' fees that were "incurred as a result of work done solely in defending the state law claims." Dietzmann v. City of Homer, Case No. 09–00019 RJB, 2013 WL 11309599, at *3 (D. Alaska June 11, 2013).

Plaintiffs have proposed dividing this case into two distinct time periods for the purposes of a fee award: 1) from the filing of the lawsuit up to the court's December 19, 2019 order granting them summary judgment and 2) after the court's December 19, 2019 summary judgment order. The first time period involved both federal issues and state-law issues and the second time period involved only plaintiffs' state-law ejectment claim. The court finds this proposed division reasonable.

---

[16]Because AS 09.60.010(c) does not apply, the court need not consider defendants' argument that they are entitled to an abatement pursuant to AS 09.60.010(e).

-7-

Case 4:18-cv-00016-HRH   Document 317   Filed 03/18/21   Page 7 of 17

For the first time period, plaintiffs incurred $163,750.50 in reasonable and necessary fees.[17] The work during this period included written discovery, motion practice, and attending depositions in Fort Yukon. Plaintiffs ask the court to allocate 40% of the fees incurred during this period to their state-law claim.

Defendants object[18] to plaintiffs' allocation for the first time period. Defendants suggest that only 15-20% of the fees from the first period should be allocated to state-law issues, given that the federal issues were inextricably intertwined with the state-law issues.

During the first time period, most of the work being done on the case related to the § 14(c) issues, which were federal issues. The court finds that for the first period of time, 80% of the work related to federal issues and 20% related to the state-law issues, which means that for the first time period, $32,750.10 of the fees incurred are subject to a Rule 82 fee award.

For the second time period, plaintiffs incurred $54,073.20 in reasonable and necessary fees.[19] All of these fees are subject to a Rule 82 fee award.

Plaintiffs have incurred $86,823.30 in fees that are subject to a Rule 82 fee award. That means that plaintiffs are entitled to $17,364.66 in attorneys' fees, unless a variation of

---

[17]Declaration of Counsel Lee C. Baxter at 5, ¶ 10 and Exhibit 1 thereto, Docket No. 301.

[18]This objection was made in an 18-page document which was attached to defendants' opposition titled "Defendants' Objections to Parts of Counsel's Hybrid Declaration." Many of defendants' "objections" were to plaintiffs' counsel's portrayal of the proceedings and rulings in this case in his declaration. Both plaintiffs' counsel's declaration and defendants' objections thereto contained unnecessary and improper argument.

[19]Baxter Declaration at 11, ¶ 21 and Exhibit 3 thereto, Docket No. 301.

this amount is warranted. Pursuant to Alaska Rule 82(b)(3),

> [t]he court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
>
> (A) the complexity of the litigation;
> (B) the length of trial;
> (C) the reasonableness of the attorneys' hourly rates and the number of hours expended;
> (D) the reasonableness of the number of attorneys used;
> (E) the attorneys' efforts to minimize fees;
> (F) the reasonableness of the claims and defenses pursued by each side;
> (G) vexatious or bad faith conduct;
> (H) the relationship between the amount of work performed and the significance of the matters at stake;
> (I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
> (J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
> (K) other equitable factors deemed relevant.

Not all the factors apply in every case, and "[i]f one or more [of the] factors justifies departure from the schedule for fee awards, the trial court may base its decision on those factors, without specifically explaining why the other factors are not relevant." Osborne v. Hurst, 947 P.2d 1356, 1362 n.3 (Alaska 1997).

Defendants argue that a downward departure in the amount of fees to be awarded is warranted. Plaintiffs argue that an enhanced fee award is warranted in this case.

Defendants first argue that factor (C), which requires the court to consider the reasonableness of the attorneys' hourly rates and the number of hours expended, weighs in favor of a downward departure. Defendants argue that the rates charged by plaintiffs' lawyers and paralegals are not reasonable because they are Anchorage rates, rather than

-9-

Fairbanks rates.[20]  The parties in this case are from Fort Yukon, Alaska and this case was removed to the Fairbanks division of this court.  As such, defendants argue that the court should look to Fairbanks rates in determining what a reasonable hourly rate is, rather than the Anchorage rates charged by plaintiffs' counsel.  Plaintiffs' lawyers charged rates ranging from $275 per hour to $390 per hour and the paralegal charged rates ranging from $195 to $260.[21]  Defendants argue that these are considerably higher than what Fairbanks lawyers with similar experience and qualifications charge.  Defendants offer the declaration of their attorney, who avers that, based on his conversations with other Fairbanks lawyers, Fairbanks lawyers with similar experience and qualifications bill at rates of $250 to $325 per hour and that Fairbanks paralegals bill at rates between $70 and $140 for civil matters, but up to $200 per hour for workers' compensation cases.[22]

The Alaska Supreme Court "has never expressly deal[t] with the issue of locality in setting reasonable hourly rates for purposes of a Rule 82 award." Nautilus Marine Enterprises, Inc. v. Exxon Mobil Corp., 332 P.3d 554, 558 (Alaska 2014) (quotation marks omitted).  Contrary to plaintiffs' argument, the court in Nautilus Marine did not hold that the entire state, rather than a particular city, is the appropriate "locality" or "forum" to consider when determining whether rates are reasonable.  The issue before the court in Nautilus Marine was how to assess the reasonableness of rates charged when the prevailing party was represented by out-of-state counsel, and the court held that "the fee customarily charged in

---

[20]Defendants do not challenge the number of hours that plaintiffs' counsel expended on this case.

[21]Baxter Declaration at 13-14, ¶ 24, Docket No. 301.

[22]Affidavit of Defendants' Attorney [etc.] at 1-3, ¶¶ 3-13, appended to Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees, Docket No. 306.

-10-

the locality for similar legal services is the basis on which awards should ordinarily be calculated, and an award based on out-of-state rates should be made only in extraordinary circumstances." Id. at 559 (citation omitted). But, the Alaska Supreme Court did not address whether, in cases involving only in-state counsel, "locality" meant the entire state of Alaska or whether it meant a particular city within the state.

The court is unpersuaded that it must only look to the Fairbanks market in determining the reasonableness of the rates charged by plaintiffs' counsel. In Alaska, attorneys routinely work back and forth between Fairbanks, Anchorage, and other places, particularly in federal cases given that the District of Alaska covers the entire state. Moreover, in this case, as between Anchorage and Fairbanks, the hourly rates of the lawyers are not all that different. The court finds that the hourly rates charged by plaintiffs' lawyers were reasonable. Although the rate charged by the Anchorage paralegal was substantially higher than the rates charged by Fairbanks paralegals, the Anchorage paralegal had "more than three decades of experience as an Alaskan paralegal[,]"[23] which justifies the higher rates. The court finds that the rates charged by the paralegal were reasonable. Factor (C) does not weigh in favor of a downward departure.

Defendants next argue that factor (D), the reasonableness of the number of attorneys used, weighs in favor of a downward departure because plaintiffs's use of four attorneys in this matter was unreasonable. However, using four attorneys was not unreasonable, particularly since two of the attorneys primarily provided supervision of Mr. Baxter, who performed the majority of the legal work on this matter for plaintiffs.[24] And, plaintiffs have

---

[23]Baxter Declaration at 14, ¶ 25, Docket No. 301.

[24]Id. at 2, ¶ 2.

"redacted billing entries . . . such that only one supervisor [was] included for any legal work."[25]  Factor (D) does not weigh in favor of a downward departure.

Defendants next argue that factor (I) weighs in favor of a downward departure.  Factor (I) requires the court to consider the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts.  Defendants argue that the amount of fees that plaintiffs are requesting, if granted, would be onerous enough to deter similarly situated litigants from pursuing their legal rights.

The court disagrees, primarily because it was defendants' management of this case which substantially impacted the amount of time that had to be expended on litigating it, which in turn drove up the amount of fees incurred by plaintiffs.  Moreover, defendants had a choice here; they could have accepted the BLM's final decision regarding the size and shape of Clarence's § 14(c) claim.  They chose instead to do battle, and they must bear the consequences of that decision.  Factor (I) does not weigh in favor of a downward departure.

Defendants next argue that factor (J) weighs in favor of a downward departure.  This factor requires the court to consider the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar.  Defendants argue that the amount of fees incurred by plaintiffs to eject them from land that is of modest value suggests that plaintiffs may have been motivated by a desire to discourage others from bringing claims against them.  Defendants contend that plaintiffs incurred attorneys' fees in an amount of about 19 times that of what the three parcels of land at issue

---

[25]Id. at 6, ¶ 11.

-12-

Case 4:18-cv-00016-HRH   Document 317   Filed 03/18/21   Page 12 of 17

are worth ($10,000-$11,000 for the land versus $217,000 in attorneys' fees). Defendants insist that this suggests that plaintiffs were driven by an improper motive.

There is no evidence of an improper motive on the part of plaintiffs in bringing this case. Plaintiffs have simply sought to enforce the BLM's ultimate decision as to the size and shape of Clarence's § 14(c) claim. And, again, to the extent that the amount of fees incurred in this case is out of proportion to what was at risk, it was defendants' management of this litigation that caused such a result. Factor (J) does not weigh in favor of a downward departure.

Finally, defendants argue that factor (K), which allows the court to consider other equitable factors deemed relevant, weighs in favor of a downward departure. Defendants argue that it would be unfair to burden Dacho with having to pay any attorneys' fees because he was not involved with Clarence's § 14(c) application, being only 12 years in 1984; because if the court's ejectment order is upheld, Dacho will lose improvements that he made on the land; and because he has three young children's higher education to fund. Dacho contends that an award of attorneys' fees would largely fall to him as his father has no means to pay any judgment against him.

Factor (K) does not weigh in favor of a downward departure. Although defendants did not initiate this litigation, the possibility of an adverse fee award should have been part of their consideration when they were deciding whether and to what extent they were going to defend against plaintiffs' ejectment claim.

Turning then to the question of an enhanced fee award, plaintiffs rely on factors (F) and (G), which require the court to consider the reasonableness of the claims and defenses pursued by each side and whether there was vexatious or bad faith conduct. "Reliance on" factor (F) "is appropriate where the nonprevailing party has made unreasonable arguments."

State v. Jacob, 214 P.3d 353, 362 (Alaska 2009). But, "[w]hen a party has taken a legitimate position, it has not acted unreasonably for the purposes of Rule 82." Alderman v. Iditarod Properties, Inc., 104 P.3d 136, 144 (Alaska 2004). "[T]he court may not hold . . . arguably reasonable defenses against the losing party." Riddle v. Lanser, 421 P.3d 35, 50 (Alaska 2018). As for factor (G), "Black's Law Dictionary defines the term 'vexatious" to mean 'without reasonable or probable cause or excuse; harassing; annoying.'" United States v. Sherburne, 249 F.3d 1121, 1126 (9th Cir. 2001) (quoting Black's Law Dictionary 1559 (7th ed.1999)).

Plaintiffs argue that defendants' conduct has been "unreasonable and vexatious"[26] and that defendants' approach to litigating this case greatly increased the cost to litigate this case. In particular, plaintiffs contend that defendants refused to accept the court's rulings on issues as evidenced by their repeated attempts to revive claims, arguments, and issues that the court had already decided. "[A] party's insist[ence] on litigating a weak and incredible [position] to its highly predictable conclusion may justify an enhanced fee award." Keenan v. Meyer, 424 P.3d 351, 360 (Alaska 2018) (citation omitted). And, plaintiffs argue that is exactly what has happened here. Plaintiffs argue that defendants have repeatedly continued to advance their arguments on issues even after the court rejected their arguments. Plaintiffs are not arguing that defendants' positions and defenses were necessarily unreasonable to begin with. Rather, they are arguing that defendants refused to accept the court's rulings on any issue and that by continuing to repeat their arguments at every opportunity, defendants have caused the attorneys' fees to be much higher in this case than they should have been. Plaintiffs cite to

---

[26]Motion for Costs and Attorneys' Fees at 17, Docket No. 300.

-14-

a number of examples but the best is perhaps from the court's order on plaintiffs' motion to eject. There, the court stated that

> [i]t has been defendants' practice to file motions for reconsideration of any substantive order entered by the court. Most of these motions for reconsideration have been meritless because defendants merely reiterate arguments that the court has already considered and rejected. While the court is reluctant to preclude defendants from filing a motion for reconsideration of this order, defendants are reminded that the purpose of a motion for reconsideration is not to repeat failed arguments. The court understands that defendants believe that it is mistaken in its application of the statute of limitations and its conclusion that defendants' adverse possession affirmative defense failed. These are issues that defendants make take up on appeal. But, rearguing these issues over and over again to this court is not going to make the court change its mind.[27]

Plaintiffs argue that given defendants' conduct, they are entitled to an enhanced fee of 75%.

Plaintiffs' request for enhanced fees of 75% is over the top. Both the court and plaintiffs were annoyed by defense counsel's habit of filing repetitive motions for reconsideration that had no basis in fact or law. But, the court is not convinced that defendants' claims and defenses were unreasonable or that defendants' conduct reached the level of vexatiousness.

Plaintiffs might have, but did not, address factor (E), the attorney's efforts to minimize fees. Here, defense counsel did nothing to minimize defendants' exposure to attorneys' fees. On the contrary, defense counsel managed this litigation in a fashion which substantially increased fees, primarily by failing to focus upon the real issues in the case and instead pursuing issues that had either already been decided or had minimal chance of success. Based on factor (E), the court finds that plaintiffs are entitled to an enhanced fee award of

---

[27]Order re Motion to Eject; Motions for Evidentiary Rulings at 27-28, Docket No. 281.

thirty percent. As set out above, $86,823.30 of the fees reasonably and necessarily incurred by plaintiffs are subject to Rule 82. Thus, plaintiffs are entitled to $26,046.99 in attorneys' fees.

Taxable Costs

Local Rule 54.1(e) provides that

> [t]axable costs include:
>
> (1) marshal fees . . . and other reasonable service of process fees;
> (2) transcripts when prepared pursuant to stipulation or order;
> (3) reasonable deposition costs, including transcript and interpreter's fee;
> (4) non-party witness fees, mileage, and subsistence, including parties subpoenaed by adverse parties. . . ;
> (5) interpreter fees;
> (6) reasonable cost of copying and exhibit preparation, excluding demonstrative exhibits;
> (7) docket fees . . . ;
> (8) fees for masters, receivers, and commissioners ordered by the court;
> (9) state court filing fees for removal jurisdiction actions;
> (10) postage; and
> (11) other costs specifically required by court order.

Plaintiffs seek $4,550.33 in taxable costs.[28]

Defendants first object to the $269.40 plaintiffs request for printing and the $78.96 for postage. Defendants argue that these are attempts by plaintiffs to get reimbursed "for every expense" that they incurred, which is not permitted. Thomas v. Treasury Management Ass'n, Inc., 158 F.R.D. 364, 372 (D. Md. 1994). These are, however, proper taxable costs.

Secondly, defendants object to the $1,094.96 plaintiffs request for "[f]ees for exemplification and the costs of making copies of any materials where the copies are

---

[28]Exhibit 5 at 1, Baxter Declaration, Docket No. 301.

-16-

necessarily obtained for use in the case."[29]  Defendants argue that plaintiffs have not provided any supporting documentation to show that these costs were essential or necessary to the case.  However, plaintiffs have provided the invoices for these costs,[30] except for one charge of $375.16.  $375.16 will be deducted from plaintiffs' request for taxable costs

<u>Conclusion</u>

Plaintiffs' motion for costs and attorneys' fees is granted.  Plaintiffs are awarded $26,046.99 in attorneys' fees and $4,175.17 in taxable costs.

DATED at Anchorage, Alaska, this 18th day of March, 2021.

/s/ H. Russel Holland
United States District Judge

---

[29]<u>Id.</u>

[30]Exhibit 6 at 3-4, 7-8, Baxter Declaration, Docket No. 301.